Opinion issued December 28, 2012



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-10-00933-CV

_____

**AMANDA JONES AND DAVID JONES, Appellants**

**V.**

**FOUNDATION SURGERY AFFILIATES OF BRAZORIA COUNTY D/B/A BRAZORIA COUNTY SURGERY CENTER AND BRAZORIA COUNTY SURGERY CENTER, Appellees**

**On Appeal from the 412th District Court**
**Brazoria County, Texas**
**Trial Court Case No. 48281**

## OPINION

Appellants, Amanda and David Jones (collectively, the "Joneses"), appeal the no-evidence and traditional summary judgments granted by the trial court in favor of appellees, Foundation Surgery Affiliates of Brazoria County L.L.P. *d/b/a*

Brazoria County Surgery Center (the "Partnership") and Brazoria County Surgery Center (the "Surgery Center") and Henry Martinez, M.D., P.A.[1] The Joneses' suit alleges that the Partnership is vicariously liable for the medical negligence of Dr. Martinez, a partner in the Partnership, in performing gall bladder surgery on Mrs. Jones at the Surgery Center in August 2007.

In two issues, the Joneses argue that the trial court erred in granting the Partnership's and the Surgery Center's separate motions for summary judgment because their own response and attached exhibits presented more than a scintilla of evidence that (1) Dr. Martinez was acting as a partner in the ordinary course of the Partnership's business when Mrs. Jones was injured and (2) Dr. Martinez's actions were authorized by the Partnership. They contend that "[appellees] are vicariously liable for the acts of Dr. Martinez as Dr. Martinez was a partner at the time of his injurious acts and partnerships are liable for the actionable conduct of [their] partners." We reverse the summary judgments and remand the case.[2]

## Background

This case arises out of gallbladder surgery performed on Amanda Jones by Dr. Martinez at the Surgery Center on August 2, 2007. Dr. Martinez had become a

---

[1] Dr. Martinez is not a party to this appeal.

[2] The Surgery Center is the registered "*d/b/a*," or assumed name, of the Partnership. Thus, contrary to the representations of the parties, we find the appellees to be a single legal entity—the Partnership, which does business as the Surgery Center.

partner in the Partnership on November 20, 2006. The Joneses allege "Dr. Martinez committed multiple egregious surgical errors causing catastrophic injury to Amanda Jones."

The Partnership was formed as Foundation Surgery Affiliates of Brazoria County, L.L.P. in 2003 and registered with the Texas Secretary of State by Robert M. Byers as a limited liability partnership pursuant to section 3.08(b) of the Texas Revised Partnership Act ("TRPA"). The Partnership stated its business as "Ambulatory Surgery Center." In January 2005, the Partnership filed an assumed name certificate with the Texas Secretary of State listing "Brazoria County Surgery Center" as "[t]he assumed name under which the business or professional service is . . . conducted." The Partnership characterized itself as a "Registered Limited Liability Partnership." In November 2006, Byers, as the president of "Foundation Surgery Affiliates, LP, manager of Foundation Surgery Affiliates of Brazoria County, LLP," filed a "Renewal of Registration of a Limited Liability Partnership" with the Texas Secretary of State on behalf of the Partnership. That filing includes an attached "Statement of Partnership Business" listing the Partnership's business as "outpatient surgery."

After Mrs. Jones's surgery in August 2007, the Partnership and its general partner were both converted to limited liability companies. Specifically, in September 2007, Byers, as the president of Foundation HealthCare Affiliates,

3

LLC, registered Foundation Surgery Holdings, L.L.C., a Delaware entity, as a foreign limited liability company whose business was the "management of outpatient surgery centers and surgical hospitals" to manage the Surgery Center. In November, 2007, Byers, as president of Foundation Surgery Holdings, LLC, "a managing partner of Foundation Surgery Affiliates of Brazoria County, LLP," filed a new "Statement of Partnership Business," again listing the Partnership's business as "outpatient surgery." In October 2008, the Partnership, "Foundation Surgery Affiliates of Brazoria County, a Texas general partnership," filed a "Certificate of Conversion of a General Partnership Converting to a Limited Liability Company" with the Texas Secretary of State pursuant to Texas Business Organizations Code ("TBOC") section 10.101 and Texas Revised Partnership Act ("TRPA") article 6132b. It listed its general partner as Foundation Surgery Holdings, L.L.C. That same day, the converting entity, "Foundation Surgery Affiliate[s] of Brazoria County, LLP, a Texas limited liability partnership, organized on November 18, 2003," filed a "Certificate of Formation Limited Liability Company" with the Texas Secretary of State, converting to a limited liability company named Foundation Surgery Affiliates of Brazoria County, L.L.C. The filings by the Partnership with the Texas Secretary of State included in the summary judgment record recite that the purpose of the Partnership was to provide outpatient surgery,

4

and they show that the Partnership did business as the Surgery Center, a registered assumed name of the Partnership.

According to the Partnership's "Subscription Agreement," included in the summary judgment record, the Surgery Center is "a multi-specialty outpatient surgery center or hospital located in Brazoria County, Texas" that is owned and operated by the Partnership. At the time of the surgery, Dr. Martinez was a partner in the Partnership by virtue of his purchase of Class A Units of Partnership Interests in November 2006 under the Subscription Agreement.

Among the "Investment Risk Factors" associated with Dr. Martinez's investment in the Partnership, listed in Appendix "C" to the Subscription Agreement, were a number of risks associated with the heavily regulated health care industry, including risks associated with "the establishment, marketing and operation of hospitals and surgery centers . . . subject to various federal and state regulations." The "Investment Risk Factors" appendix pointed out that, in order to satisfy the "safe harbor" provisions of certain federal regulatory requirements that guarded against illegal remuneration, the "multi-specialty portion of the safe harbor for ambulatory surgery centers in which the physicians are engaged in different specialties," it was required that "all of the investors are (i) *physicians in different specialties or hospital[s]. . . .*" (Emphasis in original.) The "Investment Risk Factors" further provided:

> The Partners have limited rights to take part in the management or control of the Partnership's business or affairs. In addition, the Partnership has limited control over the actions of physicians who may treat their patients at the Partnership.

Dr. Martinez acknowledged and accepted these risks in executing the Subscription Agreement.

The summary judgment evidence also included the deposition testimony of Bradley Cardenas, the Surgery Center's vice president of operations. Cardenas testified that the business of the Partnership was to provide a facility—the Surgery Center—where its partner-surgeons could perform their cases and that when Dr. Martinez operated on Mrs. Jones at the Surgery Center in 2007, he was one of the Partnership's ten partner-surgeons. Cardenas also testified that the Surgery Center was formed by the Partnership as a stand-alone surgery center that provided "nursing staff, technical staff, scrub techs, supplies, equipment, [and] a business staff" to its partner-surgeons; the Partnership billed the patients and their insurance carriers for such services performed at the Surgery Center; any resulting profits were periodically distributed to all of the partners based upon their pro rata equity ownership; Dr. Martinez and the other partner-surgeons were obliged via the Partnership to perform one-third of their outpatient cases and to derive one-third of their income at the Surgery Center; and their failure to do so would warrant revocation of their Partnership interest. Finally, Cardenas testified that the sole

6

business conducted at the Surgery Center was surgical procedures performed by the partner-surgeons.

### Governing Law

As a preliminary matter, it is necessary to determine which law governs this dispute.

The parties agree that, because the Partnership was formed in 2003, the former Texas Revised Partnership Act ("TRPA") governs the relationship between the Partnership and its partners that existed at the time the Joneses' cause of action arose and that the TRPA provides the statutory basis for the imposition of vicarious liability upon partnerships for the acts of their partners under specified circumstances. *See* Act of May 31, 1993, 73d Leg., R.S., ch. 917, § 1, sec. 3.02, 1993 Tex. Gen. Laws 3887, 3892 (expired Jan. 1, 2010)).

In *Ingram v. Deere*, however, the Texas Supreme Court pointed out:

> On January 1, 2010, TRPA will expire, and the [Texas Business Organizations Code ("TBOC")] will apply to all partnerships, regardless of their formation date. TEX. REV. CIV. STAT. art. 6132b-11.03. TRPA and the TBOC's rules for determining partnership formation are substantially the same. *Compare* TEX. BUS. ORGS. CODE § 152.002, *with* TEX. REV. CIV. STAT. art. 6132b-2.03.

288 S.W.3d 886, 894 n.4 (Tex. 2009).

The TRPA has now expired; therefore, current law applies as set out in the TBOC. Indeed, the passages of the TBOC that codified the relevant passages of the TRPA were all in effect at the time this suit was filed. The current governing

7

law is, however, as the supreme court noted in *Ingram,* "substantially the same" as the provisions of the TRPA that are relied upon by the parties in this case. *See id.* Therefore, we will apply current law, with initial parallel citations to former law. *See* TEX. GOV'T CODE ANN. § 311.031(c) (Vernon 2005) ("The repeal of a statute by a code does not affect an amendment, revision, or reenactment of the statute by the same legislature that enacted the code. The amendment, revision, or reenactment is preserved and given effect as part of the code provision that revised the statute so amended, revised, or reenacted."); *Knight v. Int'l Harvester Credit Corp.*, 627 S.W.2d 382, 384 (Tex. 1982) ("This Court has frequently held that if a cause of action is based on a statute, the repeal or amendment of that statute without a savings clause for pending suits is given immediate effect."); *Firemen's Pension Comm'n v. Jones*, 939 S.W.3d 730, 733 (Tex. App.—Austin 1997, no pet.) (holding same).

**No-Evidence and Traditional Motions for Summary Judgment**

**A. Standard of Review**

An appellate court reviews de novo the trial court's ruling on a summary judgment motion. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). When the trial court does not specify the grounds for its grant of summary judgment, the reviewing court must affirm the summary judgment if any

8

of the theories presented to the court and preserved for appeal are meritorious. *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003). When there are multiple grounds for summary judgment and the order does not specify the ground on which the summary judgment was granted, the appellant must negate all grounds on appeal. *State Farm Fire & Cas. Co. v. S.S..*, 858 S.W.2d 374, 381 (Tex. 1993); *Ellis v. Precision Engine Rebuilders, Inc.*, 68 S.W.3d 894, 898 (Tex. App.—Houston [1st Dist.] 2002, no pet).

When a summary judgment motion is filed as a hybrid motion based upon both no-evidence and traditional grounds, we first review the trial court's judgment under the no-evidence standard of review. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004); *All Am. Tel., Inc. v. USLD Commc'ns, Inc.*, 291 S.W.3d 518, 526 (Tex. App.—Fort Worth 2009, pet. denied); *E. Hill Marine, Inc. v. Rinker Boat Co.*, 229 S.W.3d 813, 816 (Tex. App.—Fort Worth 2007, pet. denied). If the movant has filed a proper no-evidence motion for summary judgment and the non-movant has failed to produce more than a scintilla of evidence under the standards of Rule 166a(i), there is no need to analyze whether the movant's summary judgment proof satisfied the burden set forth for traditional summary judgment under Rule 166a(c). TEX. R. CIV. P. 166a(c), (i); *E. Hill Marine, Inc.*, 229 S.W.3d at 816.

A no-evidence summary judgment is essentially a directed verdict granted before trial; thus, we apply a legal-sufficiency standard of review. *See City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005) ("[T]he test for legal sufficiency should be the same for summary judgments, directed verdicts, judgments notwithstanding the verdict, and appellate no-evidence review."). Accordingly, a proper no-evidence summary judgment must be affirmed when the record shows one of the following: (1) there is no evidence on the challenged element; (2) the evidence offered to prove the challenged element is no more than a scintilla; (3) the evidence establishes the opposite of the challenged element; or (4) the court is barred by law or the rules of evidence from considering the only evidence offered to prove the challenged element. *Id.* at 810; *see Patel v. City of Everman*, 179 S.W.3d 1, 17 (Tex. App.—Tyler 2004, pet. denied). Less than a scintilla of evidence exists when the evidence is so weak as to do no more than create a mere surmise or suspicion of a fact. *Forbes, Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 172 (Tex. 2003). More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997).

To prevail on a traditional summary judgment motion, the movant must establish that "there is no genuine issue as to any material fact" and that it "is

entitled to judgment as a matter of law on the issues expressly set out in the motion or in an answer or any other response." TEX. R. CIV. P. 166a(c); *see Little v. Tex. Dep't of Criminal Justice*, 148 S.W.3d 374, 381 (Tex. 2004). When a defendant moves for traditional summary judgment, it must either: (1) disprove at least one essential element of the plaintiff's cause of action, or (2) plead and conclusively establish each essential element of its affirmative defense, thereby defeating the plaintiff's cause of action. *See Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995) (per curiam).

If the movant meets its burden, the burden then shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment. *See Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). The evidence raises a fact issue if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007) (per curiam). To determine if the nonmovant has raised a fact issue, we view the evidence in the light most favorable to the nonmovant, crediting favorable evidence if reasonable jurors could do so, and disregarding contrary evidence unless reasonable jurors could not. *See Fielding*, 289 S.W.3d at 848 (citing *City of Keller*, 168 S.W.3d at 827). We indulge every reasonable inference and resolve any doubts in the nonmovant's

11

favor. *See Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002) (citing *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997)).

**B. Ordinary Course of Partnership Business**

In their first issue, the Joneses argue that they produced more than a scintilla of evidence that Dr. Martinez was acting as a partner in the ordinary course of the Partnership's business when Mrs. Jones was injured.

Specifically, the Joneses argue that the business purpose of the Partnership was to operate an outpatient surgical facility where its partner-surgeons would perform a portion of their surgeries. As a partner, Dr. Martinez was obligated by the Partnership to perform at least one-third of his outpatient surgeries at the Surgery Center. Thus, Dr. Martinez was acting in the ordinary course of the Partnership's business in furtherance of the Partnership's goals when he performed outpatient gallbladder surgery on Ms. Jones at the Surgery Center.

The Partnership argues, by contrast, that the trial court did not err in granting it summary judgment on the Joneses' vicarious liability claim because the Joneses did not provide, and could not provide, any evidence that Dr. Martinez was acting in the ordinary course of the Partnership's business when Mrs. Jones was injured. More specifically, the Partnership argues that it was factually impossible for Dr. Martinez to have been acting in the ordinary course of the Partnership's business at the time Mrs. Jones was injured because Dr. Martinez was practicing medicine

12

when he injured Mrs. Jones and the Partnership is prohibited by statute from practicing medicine. *See* TEX. OCC. CODE ANN. §§ 155.001, 155.003 (Vernon 2012) (stating that only a "person" may be licensed to practice medicine in Texas and providing eligibility requirements for licensure). Thus, when Dr. Martinez was performing surgery on Mrs. Jones (i.e., practicing medicine), he was not acting in the "ordinary course of business of the Partnership."

We construe the Partnership's argument as an argument for traditional summary judgment based on its claim that, as a matter of law—not fact—it was impossible for Dr. Martinez to have been acting in the ordinary course of the Partnership's business when he operated on Mrs. Jones because the Partnership was forbidden by law from practicing medicine; therefore, the practice of medicine could not be its ordinary course of business. *See* TEX. R. CIV. P. 166a(c) (providing for summary judgment where movant shows that, "except as to the amount of damages, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion or in an answer or any other response").

TBOC section 152.301, governing limited liability partnerships, is identical to former TRPA article 6132-3.01, which the parties argue governs this issue in part. Section 152.301 provides in its entirety, "Each partner is an agent of the partnership for the purpose of its business." TEX. BUS. ORGS. CODE ANN.

13

§ 152.301 (Vernon 2012); Act of May 31, 1993, 73d Leg., R.S., ch. 917, § 1, sec. 3.02, 1993 Tex. Gen. Laws 3887, 3892 (expired Jan. 1, 2010).

Likewise, TBOC section 152.302 codifies former TRPA article 6132b-3.02(a), argued by the parties. Section 152.302 provides, in relevant part:

> (a) Unless a partner does not have authority to act for the partnership in a particular matter and the person with whom the partner is dealing knows that the partner lacks authority, an act of a partner . . . binds the partnership if the act is apparently for carrying on in the ordinary course:
>
> (1) the partnership business; or
>
> (2) business of the kind carried on by the partnership.
>
> (b) An act of a partner that is not apparently for carrying on in the ordinary course a business described by Subsection (a) binds the partnership only if authorized by the other partners.

TEX. BUS. ORGS. CODE ANN. § 152.302 (Vernon 2012).[3]

---

[3] Article 6132b-3.02 provided:

> (a) Partner Agent of Partnership as to Partnership Business. Each partner is an agent of the partnership for the purpose of its business. Unless the partner does not have authority to act for the partnership in the particular matter and the person with whom the partner is dealing knows that the partner lacks authority, an act of a partner, including the execution of an instrument in the partnership name, binds the partnership if the act is for apparently carrying on in the ordinary course:
>
> (1) the partnership business; or
>
> (2) business of the kind carried on by the partnership.

Finally, TBOC section 152.303, formerly article 6132b-3.03, provides:

(a) A partnership is liable for loss or injury to a person, including a partner, or for a penalty caused by or incurred as a result of a wrongful act or omission or other actionable conduct of a partner acting:

(1) in the ordinary course of business of the partnership; or

(2) with the authority of the partnership.

TEX. BUS. ORG. CODE ANN. § 152.303 (Vernon 2012); Act of May 31, 2003, 73rd Leg., R.S., ch. 917, § 1, sec. 3.03, 1993 Tex. Gen. Laws 3887, 3893 (expired Jan. 1, 2010).

Under the plain language of the TBOC, as under the TRPA, "[e]ach partner is an agent of the partnership for the purpose of its business." *Id.* § 152.301. The actions of a partner in a limited liability partnership bind the partnership so long as the act is apparently for carrying on in the ordinary course of either (a) partnership business itself or (b) business of the kind carried on by the partnership. *Id.* § 152.302(a). However, if a partner acts outside the scope of the partnership's business, his actions may bind the partnership only if authorized by the other

---

(b) Act Outside Scope of Business. An act of a partner does not bind the partnership unless authorized by the other partners if the act is not apparently for carrying on in the usual way:

(1) the partnership business; or

(2) business of the kind carried on by the partnership.

Act of May 31, 1993, 73rd Leg., R.S., ch. 917, § 1, sec. 3.02, 1993 Tex. Gen. Laws 3887, 3892 (Expired Jan. 1, 2010).

15

partners.  *Id.* § 152.302(b).  And, under TBOC section 152.303, as under TRPA article 6132-3.03(a), a partnership is liable for injuries resulting from a wrongful act or omission or other actionable conduct of a partner acting (1) in the ordinary course of business of the partnership or (2) with the authority of the partnership. *Id*. § 152.303(a).

The Joneses seek damages from the Partnership for the loss suffered by them "as a result of a wrongful act or omission or other actionable conduct" of Dr. Martinez, acting in his capacity as a partner "in the ordinary course of business of the partnership" when he performed gallbladder surgery on Mrs. Jones.  *See id.* Under the plain language of the controlling statutes, TBOC sections 152.301, 152.302, and 152.303, therefore, Dr. Martinez, a partner in the Partnership, was acting as the Partnership's agent, and the Partnership was bound by his acts and could be found liable for them if he was acting in the ordinary course of the Partnership's business at the time he performed surgery on Mrs. Jones or if his act of performing that surgery was authorized by the other partners, even though it was outside the ordinary course of the Partnership's business, and his wrongful act or omission or other actionable conduct caused the Joneses to suffer loss or injury. *See id.* § 152.301–.305; Act of May 31, 1993, 73rd Leg., R.S., ch. 917, § 1, sec. 3.02–.03, 1993 Tex. Gen. Laws 3887, 3892–93 (expired Jan. 1, 2010); *see also Kelsey-Seybold Clinic v. Maclay*, 466 S.W.2d 716, 718–19 (Tex. 1971) (stating

16

that, under pre-TRPA common law, partnership liability for conduct of partner must arise through partner's conduct as agent in carrying on ordinary course of partnership business or with authority of partnership).

The uncontested summary judgment evidence, in the form of the Partnership's filings with the Texas Secretary of State as a registered limited liability partnership, the Subscription Agreement, and the testimony of Cardenas, shows that Dr. Martinez was performing surgery at the Surgery Center, an outpatient surgery facility built and operated by the Partnership for the purpose of performing outpatient surgery by the partner-surgeons, when his conduct as a surgeon injured Mrs. Jones. At the time of the surgery, Dr. Martinez was a partner in the Partnership by virtue of his purchase of Class A Units of Partnership Interests in November 2006 under the Partnership's Subscription Agreement. In the Subscription Agreemen" that Dr. Martinez signed, the Partnership expressly describes itself as "a limited liability partnership (the 'Partnership') . . . which owns and operates a multi-specialty outpatient surgery center or hospital in Texas (the 'Facility')." The filings by the Partnership with the Texas Secretary of State included in the summary judgment record also recite that the purpose of the Partnership was to provide outpatient surgery, and they show that the Partnership did business as the Surgery Center, a registered assumed name of the Partnership.

17

We hold that there is more than a scintilla of evidence to show that Dr. Martinez was acting in the ordinary course of the Partnership's business when he performed surgery on Mrs. Jones. *See* TEX. BUS. ORGS. CODE ANN. § 152.302(a). Therefore, we hold that the Joneses have raised a material fact issue as to whether the Partnership is liable for any loss or injury to the Joneses incurred as a result of a wrongful act or omission or other actionable conduct of Dr. Martinez in performing that operation. *See id.* § 152.303(a); TEX. R. CIV. P. 166a(c).

The Partnership argues, however, that the ordinary course of business of the Partnership cannot be the practice of medicine because the Partnership cannot be licensed to practice medicine. *See* TEX. OCC. CODE ANN. §§ 155.001, 155.003. Citing to Cardenas's testimony, the Partnership argues that, as the Surgery Center, its business was merely to provide a facility with a nursing staff, technical staff, scrub techs, supplies, equipment, and a business staff where its partner-surgeons could perform their cases. The Partnership argues that utilizing that facility and its resources (e.g., performing surgery), is not the same as providing that facility. Thus, it argues that Cardenas's testimony is no evidence that Dr. Martinez was acting in the ordinary course of the Partnership's business at the time he performed outpatient gallbladder surgery on Mrs. Jones at the Surgery Center.

The Partnership's argument, however, ignores both its own filings with the Texas Secretary of State, stating that the Partnership's business is outpatient

ambulatory surgery, and the plain language of the Subscription Agreement saying the same thing. Indeed, its argument contradicts the express language of the Subscription Agreement and of the Partnership's registration documents and the plain language of the controlling law. The only rational conclusion from the summary judgment record is that the Joneses have produced more than a scintilla of probative evidence that Dr. Martinez was acting in the ordinary course of the Partnership's business in operating on Mrs. Jones at the Surgery Center and that the Partnership is vicariously liable for any loss or injury to the Joneses incurred as a result of Dr. Martinez's wrongful conduct in the treatment of Mrs. Jones.

We hold that the trial court erred in granting summary judgment to the Partnership on its claim that Dr. Martinez was not acting in the ordinary course of the business of the Partnership when he operated on Mrs. Jones and that, therefore, the Partnership cannot be held liable for the wrongful conduct on which the Joneses' claims are based. *See City of Keller*, 168 S.W.3d at 810; TEX. R. CIV. P. 166a(c); (i).

We sustain the Joneses' first issue.

**C. Partnership's Authorization of Mrs. Jones' Surgery by Dr. Martinez**

In their second issue, the Joneses argue that the trial court erred in holding that the Partnership was entitled to summary judgment on their vicarious liability claim because Dr. Martinez's actions were authorized by the Partnership. The

19

Partnership argued below, and argues on appeal, that TRPA article 6132-2.02(e), now TBOC section 152.055(b), prohibited Dr. Martinez's partners from "authorizing" his care and treatment of Jones (a) because the Partnership was prevented by law from controlling the treatment decisions made by Dr. Martinez, as statutorily required for authorization of his acts, and (b) because the summary judgment evidence showed that the Partnership authorized only medical treatment within the scope of reasonable care and Dr. Martinez's acts were outside the scope of authorized care. The Partnership further argues that it did not ratify Dr. Martinez's unauthorized acts.

Again, we construe the Partnership's purported "no-evidence" motion for summary judgment as a motion for traditional summary judgment because it seeks to establish that Dr. Martinez's acts were unauthorized and were not ratified as a matter of law, not that the Joneses failed to produce evidence of authorization or ratification. *See* TEX. R. CIV. P. 166a(c), (i) & cmt.–1997.

We have held that the allegedly wrongful conduct of Dr. Martinez that is the basis of this lawsuit occurred in the ordinary course of the Partnership's business and, therefore, that the Partnership is not entitled to summary judgment on its vicarious liability claim on the ground that Dr. Martinez's conduct did not occur in the Partnership's course of business. Under TBOC sections 152.301, 152.302, and 152.303, a partnership must be shown to have authorized the acts of a partner in

20

order for liability to attach only if the wrongful conduct complained of was *not* within the ordinary course of the partnership's business. *See* TEX. BUS. ORGS. CODE ANN. §§ 152. 301–.303. Therefore, it is unnecessary for us to reach the arguments advanced with respect to the Joneses' second issue. Nevertheless, we find the Partnership's arguments that the Partnership neither authorized nor ratified Dr. Martinez's surgery on Mrs. Jones to be contradicted by both the law and the summary judgment evidence and thus to be entirely without merit.

The Partnership argues that, as a matter of law, TBOC section 152.055(b), formerly TRPA article 2.02(e), prohibited Dr. Martinez's partners from "authorizing" his care and treatment of Mrs. Jones because the Partnership was prevented by law from controlling the treatment decisions made by Dr. Martinez, and, therefore, the Partnership could not be vicariously liable for that treatment. This argument misconstrues section 152.055, on which it relies.

Section 152.055, states in pertinent part:

> (a) Persons licensed as doctors of medicine . . . may create a partnership that is jointly owned by those practitioners to perform a professional service that falls within the scope of practice of those practitioners.

> (b) When doctors of medicine, osteopathy, and podiatry create a partnership that is jointly owned by those practitioners, the authority of each of the practitioners is limited by the scope of practice of the respective practitioners and none can exercise control over the other's clinical authority granted by their respective licenses, either through agreements, bylaws, directives, financial incentives, or other

21

arrangements that would assert control over treatment decisions made by the practitioner.

TEX. BUS. ORGS. CODE ANN. § 152.055(a), (b) (Vernon 2012); Act of May 17, 1999, 76th Leg., R.S., ch. 813, § 1, sec. 3, 1999 Tex. Gen. Laws 3445, 3447 (expired Jan. 1, 2010).

The Partnership cites the language in subsection 152.055(b) which provides that "[w]hen doctors of medicine . . . create a partnership that is jointly owned by those practitioners, the authority of each of the practitioners is limited by the scope of practice of the respective practitioners and none can exercise control over the other's clinical authority granted by their respective licenses either through agreements . . . or other arrangements that would assert control over *treatment decisions made by the practitioner.*" *See id.* § 152.055(b) (emphasis added). It then argues that it was factually impossible for Dr. Martinez to have been acting in the Partnership's ordinary course of business when he operated on Mrs. Jones because he was practicing medicine; practicing medicine requires a license; and a partnership cannot be licensed to practice medicine.

The Partnership ignores the limitation of section 152.055(b) to the prohibition of a partnership's control over the *treatment decisions* made by a partner in the course of practicing medicine (here, performing surgery). *See id.* And it ignores section 152.005(a), which provides that "[p]ersons licensed as doctors of medicine . . . *may create a partnership that is jointly owned by those*

22

*practitioners to perform a professional service that falls within the scope of practice of those practitioners.*" *Id.* § 152.055(a) (emphasis added). By omitting the limitation set out in (b) and omitting reference to (a) altogether, the Partnership makes it appear, falsely, that physicians may *not* form a partnership to perform a professional service within the scope of the practices of each of the partners because to do would be to "exercise control over the other's clinical authority granted by their respective licenses." *Id.* § 152.055(b). This construction of section 152.055 contradicts the plain language of section 152.055(a), which specifically *permits* the formation of a partnership of medical practitioners "to perform a professional service that falls within the scope of practice of those practitioners." *Id.* § 152.005(a).

Rather than harmonizing the provisions of the TBOC, the Partnership carves a section out of the whole and improperly construes it in a way that conflicts with the whole statute when its provisions are read together, and it improperly reaches a conclusion that is self-contradictory. *See* TEX. GOV'T CODE ANN. § 311.021 (Vernon 2005) (codifying presumption that, in enacting statute, legislature intends entire statute to be effective and to reach "a just and reasonable result"); *City of Rockwell v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008) (holding that we construe statutory language according to words' plain or common meaning unless contrary intention is apparent or construction leads to absurd result); *Tex. Prop. &*

23

*Cas. Ins. Guar. Ass'n v. Brooks*, 269 S.W.3d 645, 649 (Tex. App.—Austin 2008, no pet.) (holding same).

Moreover, the conclusion that the Partnership did not authorize Dr. Martinez to conduct surgery at the Surgery Center is contradicted by the evidence. The Partnership ignores the Subscription Agreement's express acknowledgement that "the Partnership has limited control over the actions of physicians who may treat their patients at the Partnership." Under section 152.055(b), that limited control could not extend to control over treatment decisions made by Dr. Martinez, but, under subsection 152.055(a), it could and did extend to the Partnership's control of Dr. Martinez's authorization to provide professional services by performing out-patient surgery within his specialty at the Surgery Center as a partner in the Partnership. And, indeed, the Joneses produced evidence, in the form of the Subscription Agreement, Cardenas's testimony, and Mrs. Jones's medical records, that the Partnership *had* expressly authorized Dr. Martinez to perform surgery on Mrs. Jones on the premises of the Surgery Center and that his partners had accepted his investment in the Partnership, the contribution of his services to the Partnership, and his remuneration from a share of the profits of the Partnership, thereby further authorizing his conduct.

Specifically, the Joneses produced evidence that Dr. Martinez had subscribed to the terms of the Subscription Agreement, which required him to

24

perform one-third of his surgeries at the Surgery Center and to share his profits with the partners. The Joneses also cited to the deposition testimony of Cardenas, the Surgery Center's vice president of operations, to that effect, as well as his testimony that the Partnership's professional standards committee "authorized Dr. Martinez and the other partner-surgeons to perform surgeries on the premises of the Surgery Center, depending upon the surgeon's specialty, and within a reasonable standard of care." Evidence that the Partnership did not control Dr. Martinez's treatment decisions with respect to the performance of the operation is not evidence that Dr. Martinez's surgery on Mrs. Jones was not authorized by the Partnership, and it plainly was authorized.

The Partnership argues, however, that Cardenas testified that the Partnership only authorized Martinez to perform such surgeries 'within a reasonable standard of care," and, thus, Dr. Martinez's actions fell outside the scope of the limited authority that the Partnership granted to Dr. Martinez. This argument, however, is contrary to both law and logic. The permission granted by the Partnership to Dr. Martinez in the ordinary course of Partnership business was permission to perform outpatient surgery within his specialty at the Surgery Center. Having granted the permission, the Partnership was potentially liable for the manner in which that surgery was performed through its responsibility for operating a safe health-care facility that delivered services to the public that met the professional standard of

care for the practice of medicine within each partner's specialty. The notion that partnerships can be held liable for the acts of their partners within the ordinary course of the business of the partnership only when those acts cannot, as a matter of law, result in liability because they satisfy a standard of reasonable professional care is a contradiction in terms. On this theory, no partnership can ever be held liable for the wrongful acts of any of its partners in providing the professional services the partnership was organized to perform since it is only organized to perform non-wrongful acts.

Clearly more than a scintilla of evidence supports findings that Dr. Martinez was acting within the scope of his professional authority in the ordinary course of the Partnership's business with respect to the gallbladder surgery he performed on Mrs. Jones; his performance of the surgery was authorized by the Partnership; and any wrongful acts or omissions or other actionable conduct that Dr. Martinez committed with respect to that surgery was in the ordinary course of business of the Partnership and committed with its authority. *See* TEX. BUS. ORGS. CODE ANN. § 152.301–.303. Therefore, we hold that the trial court erred in granting the Partnership's motion for summary judgment on the ground that Dr. Martinez's conduct was not authorized by the Partnership.

We sustain the Joneses second issue.

26

## Conclusion

We hold that the Partnership and the Surgery Center failed to carry their burden as movants of establishing their right to summary judgment as a matter of law on any of their issues. *See* TEX. R. CIV. P. 166a(c). Therefore, the trial court erred in granting summary judgment in favor of the Partnership and the Surgery Center on the Joneses' vicarious liability claims.

We reverse the judgment of the trial court and remand the case for trial on the merits.


Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Bland, and Sharp.