

NUMBER 13-15-00046-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

| | |
|---|---|
| **DOCTORS HOSPITAL AT RENAISSANCE, LTD. AND RGV MED, LLC,** | **Appellants,** |
| **v.** | |
| **JESUS JAIME ANDRADE AND JESSICA ANDRADE,** | **Appellees.** |

### On appeal from the 275th District Court of Hidalgo County, Texas.

# O P I N I O N

### Before Justices Rodriguez, Garza and Longoria
### Opinion by Justice Garza

In this permissive interlocutory appeal, *see* TEX. R. APP. P. 28.3, we are asked whether a limited partnership that owns a hospital, or its general partner, may be held vicariously liable for the negligence of a doctor who is a limited partner in the partnership. Appellants, Doctors Hospital at Renaissance, Ltd. ("DHR") and RGV Med, LLC ("RGV"),

filed a motion for summary judgment asserting that they cannot be held vicariously liable. We affirm the trial court's order denying the motion.

## I. BACKGROUND

Appellees Jesus Jaime Andrade and Jessica Andrade sued Rodolfo Lozano, M.D., alleging that Lozano was negligent in delivering their daughter Julianna on August 1, 2012, causing permanent injury to the child.[1] The Andrades later added DHR and RGV as defendants, arguing that they are vicariously liable for Lozano's negligence. DHR, a limited partnership, owns and operates Women's Hospital at Renaissance, which is where the delivery took place. RGV is DHR's general partner, and Lozano is a limited partner of DHR. Except where noted, we will refer to both appellants collectively as "DHR."[2]

DHR moved for traditional summary judgment, contending that it is entitled to judgment as a matter of law because Lozano "was not acting within the scope of [the] partnership" or "with the authority of the partnership" at the time of the alleged negligence. *See* TEX. BUS. ORGS. CODE ANN. § 152.303(a) (West, Westlaw through ch. 46, 2015 R.S.). The trial court denied summary judgment but granted DHR's petition to file an immediate interlocutory appeal. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(d) (West, Westlaw through ch. 46, 2015 R.S.) ("On a party's motion or on its own initiative, a trial court in a

---

[1] The Andrades also sued Hugo Zapata, M.D., P.A. ("Zapata"), contending that Zapata is vicariously liable for Lozano's negligence. Neither Lozano nor Zapata are parties to this appeal.

[2] As DHR's general partner, RGV "has the liabilities of a partner in a partnership without limited partners to a person other than the partnership and the other partners," except as provided elsewhere by statute or by the limited partnership provisions. TEX. BUS. ORGS. CODE ANN. § 153.152(b) (West, Westlaw through ch. 46, 2015 R.S.); *see Peterson Grp., Inc. v. PLTQ Lotus Grp.*, 417 S.W.3d 46, 56 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) ("Unlike a person doing business with a corporation, a person doing business with a limited partnership always has recourse against any general partner in the same manner as partners are liable for the liabilities of a partnership without limited partners."). Therefore, whether RGV may be held vicariously liable for Lozano's actions depends solely on whether DHR may be held liable.

civil action may, by written order, permit an appeal from an order that is not otherwise appealable if: (1) the order to be appealed involves a controlling question of law as to which there is a substantial ground for difference of opinion; and (2) an immediate appeal from the order may materially advance the ultimate termination of the litigation."). We granted permission to appeal on March 2, 2015. *See* TEX. R. APP. P. 28.3.

## II. DISCUSSION

### A. Standard of Review

Summary judgment rulings are reviewed de novo. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013); *Nalle Plastics Family L.P. v. Porter, Rogers, Dahlman & Gordon, P.C.*, 406 S.W.3d 186, 199 (Tex. App.—Corpus Christi 2013, pet. denied). In advancing a traditional motion for summary judgment, the movant has the burden of showing there is no genuine issue of material fact and it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex. 2004). An issue of fact is raised if more than a mere scintilla of evidence is produced. *See, e.g., City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005). We take as true all evidence favorable to the non-movant and indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Joe*, 145 S.W.3d at 157.

### B. Applicable Law

The parties agree that the governing statute is section 152.303 of the Texas Business Organizations Code, which is entitled "Liability of Partnership for Conduct of Partner." The statute provides:

> A partnership is liable for loss or injury to a person, including a partner, or for a penalty caused by or incurred as a result of a wrongful act or omission or other actionable conduct of a partner acting:
>
> > (1) in the ordinary course of business of the partnership; or

3

(2) with the authority of the partnership.

TEX. BUS. ORGS. CODE ANN. § 152.303(a).[3]

In *Jones v. Foundation Surgery Affiliates of Brazoria County*, the Houston First District Court of Appeals applied section 152.303 in the medical malpractice context. 403 S.W.3d 306, 312–18 (Tex. App.—Houston [1st Dist.] 2012, pet. denied). There, the court of appeals rejected the defendant partnership's argument that it was "impossible" for one of its partners, a doctor, to have been "acting in the ordinary course of the Partnership's business" when he operated on the plaintiff merely "because the Partnership was forbidden by law from practicing medicine." *Id.* at 312; *see* TEX. BUS. ORGS. CODE ANN. § 152.303(a)(1). The partnership argued that "its business was merely to provide a facility with a nursing staff, technical staff, scrub techs, supplies, equipment, and a business staff where its partner-surgeons could perform their cases." *Jones*, 403 S.W.3d at 314. But the court of appeals noted that the partnership's filings with the Texas Secretary of State, as well as its own Subscription Agreement, stated that "the Partnership's business is outpatient ambulatory surgery." *Id.* at 315. The court found this to be more than a scintilla of evidence that the doctor was, in fact, acting in the ordinary course of the partnership's business when he operated on the plaintiff. *Id.* at 314. The court found that the partnership's argument "contradicts the express language of the Subscription Agreement

---

[3] Chapter 152 of the business organizations code governs "General Partnerships" and chapter 153 governs "Limited Partnerships." However, the provisions of chapter 152 are applicable to limited partnerships to the extent that chapter 153 and other limited partnership provisions are silent. TEX. BUS. ORGS. CODE ANN. § 153.051(d) (West, Westlaw through ch. 46, 2015 R.S.); *id.* § 153.003 (West, through ch. 46, 2015 R.S.) ("(a) Except as provided by Subsection (b), in a case not provided for by this chapter and the other limited partnership provisions, the provisions of Chapter 152 governing partnerships that are not limited partnerships and the rules of law and equity govern. (b) The powers and duties of a limited partner shall not be governed by a provision of Chapter 152 that would be inconsistent with the nature and role of a limited partner as contemplated by this chapter."). We assume for purposes of this opinion, in accordance with the parties' arguments, that section 152.303 applies to a limited partnership such as DHR.

and of the Partnership's registration documents and the plain language of the controlling law." *Id.* at 315.

The *Jones* court also rejected the partnership's argument that summary judgment was proper because the doctor's actions were not "authorized by the Partnership." *Id.*; *see* TEX. BUS. ORGS. CODE ANN. § 152.303(b). The partnership contended that the doctor's actions were not authorized because: (1) "the Partnership was prevented by law from controlling the treatment decisions made by [the doctor], as statutorily required for authorization of his acts," *see* TEX. BUS. ORGS. CODE ANN. § 152.055(a) (West, Westlaw through ch. 46, 2015 R.S.); and (2) "the summary judgment evidence showed that the Partnership authorized only medical treatment within the scope of reasonable care and [the doctor]'s acts were outside the scope of authorized care." *Jones*, 403 S.W.3d at 315. The court held that, while section 152.055(b) of the business organizations code prohibits physician-partners from "exercising control over [another physician-partner]'s clinical authority granted by their respective licenses," that prohibition is limited to "treatment decisions made by the practitioner." *Id.* at 316 (citing TEX. BUS. ORGS. CODE ANN. § 152.055(b)). Further, the court noted that subsection (a) of the statute provides that "[p]ersons licensed as doctors of medicine . . . may create a partnership that is jointly owned by those practitioners to perform a professional service that falls within the scope of practice of those practitioners." *Id.* at 316 (citing TEX. BUS. ORGS. CODE ANN. § 152.055(a)). The court held:

> By omitting the limitation set out in (b) and omitting reference to (a) altogether, the Partnership makes it appear, falsely, that physicians may not form a partnership to perform a professional service within the scope of the practices of each of the partners because to do [so] would be to "exercise control over the other's clinical authority granted by their respective licenses." [TEX. BUS. ORGS. CODE ANN.] § 152.055(b). This construction of

5

> section 152.055 contradicts the plain language of section 152.055(a), which specifically permits the formation of a partnership of medical practitioners "to perform a professional service that falls within the scope of practice of those practitioners."  *Id.* § 152.005(a).

*Jones*, 403 S.W.3d at 316–17.  The court additionally noted that the plaintiff had produced evidence that, pursuant to the partnership's Subscription Agreement, the partnership had expressly authorized the doctor to perform surgery on the plaintiff.  *Id.* at 317.

Finally, the *Jones* court rejected the argument that the doctor's authorization was only limited to surgeries "within a reasonable standard of care," finding that the partnership had authorized the doctor to perform outpatient surgery and that, "[h]aving granted the permission, the Partnership was potentially liable for the manner in which that surgery was performed . . . ."  *Id.* at 318.  The court held:

> The notion that partnerships can be held liable for the acts of their partners within the ordinary course of the business of the partnership only when those acts cannot, as a matter of law, result in liability because they satisfy a standard of reasonable professional care is a contradiction in terms.  On this theory, no partnership can ever be held liable for the wrongful acts of any of its partners in providing the professional services the partnership was organized to perform since it is only organized to perform non-wrongful acts.

*Id.*

## C.    Evidence

DHR's motion for summary judgment argued that Lozano was "acting as an independent contractor and not a limited partner" at the time of the alleged negligence.  It further argued that, even if Lozano was acting as a limited partner at the time of the alleged negligence, he could not have been acting within the scope of the partnership because (1) DHR is prohibited by law from practicing medicine, and (2) DHR's partnership agreement provides that all medical decisions must be made by doctors who are members of the medical staff.  The only evidence attached to the motion and contained

in the record before this Court is the Andrades' first amended petition and requests for disclosure.[4]

The Andrades filed a response that included, among other evidence, the following response by DHR to an interrogatory propounded by the Andrades:

> INTERROGATORY NO.2: Please state the date on which [DHR] [f]irst began offering labor and delivery services to the public through The Women's Hospital at Renaissance. Was [DHR] offering labor and delivery services to the public at the time of Julianna's delivery?
>
>> ANSWER: [DHR] first began offering labor and delivery services in 2007 when the Women's Hospital at Renaissance opened. [DHR] was offering labor and delivery services to the public at the time of Julianna Andrade's delivery.

The Andrades also provided deposition testimony by Lozano in which he stated that he was a limited partner of DHR at the time of the alleged negligence, and that DHR owned the hospital at which the alleged negligence occurred.

Finally, the Andrades' response included a copy of DHR's active partnership agreement, which specifically references the establishment of a hospital and the provision of medical services. In particular, the agreement states in relevant part as follows:

> 1.7  Purposes of the Partnership.  The objects and purposes of the Partnership are (i) to develop, construct and operate such Health Care Facilities as the General Partner may deem appropriate from time to time; . . . (iii) to own, develop, operate and engage in such other business activities as the General Partner may deem appropriate from time to time; and (iv) to enter into, make and perform all such agreements and undertakings, and to engage in all such activities and transactions, as the General Partner may deem necessary or appropriate for or incidental to the carrying out of the foregoing objects and purposes.
>
> . . . .

---

[4] DHR's "Third Amended and Restated Agreement of Limited Partnership" was initially submitted under seal for the trial court's in camera inspection. However, as noted herein, the entire agreement was later submitted, not under seal, as part of the Andrades' response to the motion for summary judgment.

2.4 <u>Limited Partner Status</u>. The Limited Partners shall not perform any act on behalf of the Partnership; incur any expense, obligation or indebtedness of any nature on behalf of the Partnership; or in any manner participate in the management of the Partnership or receive or be credited with any amounts, except as specifically contemplated hereunder. A Limited Partner shall not be personally liable for any amounts other than the amounts contributed by such Limited Partner to the capital of the Partnership, and shall not be liable for any of the debts or losses of the Partnership or of the General Partner, except only to the extent that a liability of the Partnership is founded on or results from an unauthorized act or activity of such Limited Partner.

Additionally, in a section entitled "Recitals," the partnership agreement states:

A. [DHR], a Texas limited partnership formerly known as Day Surgery at Renaissance, Ltd. (the "Partnership"), was formed and organized in accordance with the provisions of the Texas Revised Limited Partnership Act, as amended (the "Act") . . .

B. The Partnership was formed and organized for the purpose of owning and operating an ambulatory surgery center located in Edinburg, Texas.

C. The Partnership has previously expanded the former ambulatory surgery center and developed and constructed, and now owns and operates, a general acute care hospital located on real property owned by the Partnership and also developed and constructed, and now owns and operates, medical office buildings and other commercial buildings located on adjacent real property owned by the Partnership.

D. It is intended that the Hospital be an efficient, quality provider of medical services within Hidalgo County.

E. [RGV] and the Initial Limited Partner (as hereinafter defined) now desire to amend and restate the Original Agreement.

Moreover, in a section entitled "Definitions," the agreement states:

"<u>Ambulatory Surgery Center</u>" shall mean the Ambulatory Surgery Center owned by the Partnership located in Edinburg, Texas.

. . . .

"<u>Health Care Facilities</u>" shall mean the Hospital, the Ambulatory Surgery Center and such other healthcare facilities operated by the Partnership from time to time.

. . . .

8

"Hospital" shall mean a general acute care hospital to be operated by the Partnership and located in Edinburg, Texas.

(Emphasis in original.)

In reply, DHR provided several additional pieces of evidence, including: (1) additional deposition testimony by Lozano; (2) RGV's articles of incorporation; (3) partnership registration documents for Foundation Surgery Affiliates of Brazoria County, LLP; and (4) DHR and RGV's "Subscription Agreement." Lozano stated in his deposition that one of the purposes of the partnership was to provide obstetrical services; however, he admitted that he never actually read the partnership agreement. RGV's articles of incorporation do not explicitly state that the practice of medicine is one of its corporate purposes.[5] The "Subscription Agreement" between DHR and RGV does not, as did the corresponding agreement in *Jones*, explicitly reference the practice of medicine.

---

[5] Article III, entitled "Purposes," states in its entirety as follows:

3.01     The Limited Liability Company shall have the powers provided for a corporation under the Texas Business Corporation Act and a limited partnership under the Texas Revised Limited Partnership Act.

3.02     The purpose for which this limited liability company is organized is to transact any and all lawful business for which limited liability companies may be organized under the laws of Texas, including, but not limited to, the following:

      a.     To carry on any business or any other legal or lawful activity allowed by law;

      b.     To acquire, own, use, convey, and otherwise dispose of and deal in real or personal property or any interest therein;

      c.     To manufacture, buy, sell, and generally deal in goods, wares and merchandise of every class and description;

      d.     To buy, rent, sell, manufacture, produce, assemble, distribute, repair, and service any and all products or services in which the company desires to engage;

      e.     To do such other acts as are incidental to the foregoing or desirable in order to accomplish the purpose for which the company was formed; and

      f.     To have and exercise all rights and powers that are now or may hereafter be granted to a limited liability company by law.

3.03     The foregoing shall be construed as objects, purposes and powers, and enumeration thereof shall not be held to limit or restrict in any manner the powers hereafter

9

**D.    Analysis**

We find that there is at least an issue of fact as to whether Lozano, at the time of the alleged negligence, was either acting in the ordinary course of DHR's business or with DHR's authority.  *See* TEX. BUS. ORGS. CODE ANN. § 152.303(a).

DHR argues that, as a limited partnership, it is statutorily prohibited by law from practicing medicine.  *See* TEX. OCC. CODE ANN. § 155.001 (West, Westlaw through ch. 46, 2015 R.S.).[6]  It further alleges that it is prohibited by statute from "exercising any control over Dr. Lozano's actions."  *See* TEX. BUS. ORGS. CODE ANN. § 152.0551(e) (West, Westlaw through ch. 46, 2015 R.S.) ("Nothing in this section may be construed to allow the practice of medicine by someone not licensed as a physician . . . or to allow a person not licensed as a physician to direct the activities of a physician in the practice of medicine.").[7]  Even assuming that these assertions are true, that does not mean that a partner must necessarily be acting outside the scope of the partnership's business and without the authority of the partnership when the partner practices medicine.  *See Jones*, 403 S.W.3d at 316–17.  As the *Jones* court recognized, section 152.055 of the business organizations code, which states that physician-partners may not "exercise control" over

---

conferred on this limited liability company by the laws of the State of Texas.

    3.04    The company may, in its Regulations, confer powers, not in conflict with law, on its Managers and Members in addition to the foregoing and in addition to the powers and authorities expressly conferred on them by statute.

[6] DHR notes that, under the Texas Medical Practice Act, only a "person" may be issued a license to practice medicine.  *See* TEX. OCC. CODE ANN. § 155.001 (West, Westlaw through ch. 46, 2015 R.S.).  It further emphasizes that persons who attempt to practice medicine without a license are subject to criminal penalties.  *See id.* § 165.153 (West, Westlaw through ch. 46, 2015 R.S.).

[7] We note that the provision cited by DHR applies only to section 152.0551 of the business organizations code, which deals with partnerships formed by physicians and physician assistants—not section 152.055, which deals with the authority of licensed doctors to create a partnership to perform professional services.  *See* TEX. BUS. ORGS. CODE ANN. §§ 152.055, 152.0551(e) (West, Westlaw through ch. 46, 2015 R.S.).

the authority of other physician-partners, nevertheless specifically authorizes the formation of a partnership "to perform a professional service that falls within the scope of practice of" the physicians. TEX. BUS. ORGS. CODE ANN. § 152.055(a). Moreover, section 152.303, governing liability of the partnership for actions of partners, does not require that a partnership have the legal or contractual authority to "exercise control" over a partner's actions in order for the partnership to be held liable for those actions; instead, it only requires that the partner be acting in the ordinary course of business of the partnership or with the authority of the partnership. *See id.* § 152.303(a). Here, DHR's active partnership agreement explicitly stated that DHR "owns and operates" the hospital at which the alleged negligence occurred; Lozano testified that he is a partner of DHR and that one of the purposes of DHR was to provide obstetrical services; and DHR's sworn interrogatory response stated that DHR "was offering labor and delivery services to the public at the time of Julianna Andrade's delivery." This is at least some evidence that DHR's "ordinary course of business" includes the practice of medicine by its physician-partners.

DHR argues that *Jones* is distinguishable because Lozano, unlike the doctor in *Jones*, was not required to perform a certain percentage of his surgeries at DHR. *See Jones*, 403 S.W.3d at 310 (noting that "partner-surgeons were obliged via the Partnership to perform one-third of their outpatient cases and to derive one-third of their income at the Surgery Center; and their failure to do so would warrant revocation of their Partnership interest"). It further notes that, unlike in *Jones*, there is no evidence that DHR's "sole business" was surgeries performed by partners. *See id.* (noting that the hospital's vice president "testified that the sole business conducted at the Surgery Center was surgical

11

procedures performed by the partner-surgeons"). We believe these are distinctions without a difference. They do not have any bearing on the issue of whether Lozano was acting in the ordinary course of DHR's business, or with its authority, at the time he delivered Julianna. *See* TEX. BUS. ORGS. CODE ANN. § 152.303(a).

DHR further argued in its motion and on appeal that, under paragraph 2.4 of the partnership agreement, Lozano "was not allowed to perform any act on behalf of the partnership." This argument ignores the explicit caveat contained within paragraph 2.4 of the partnership agreement—"except as specifically contemplated hereunder." Paragraph 2.4 therefore does not establish as a matter of law that Lozano was not acting on behalf of DHR or with the authority of DHR at the time of the alleged negligence.[8] Similarly, DHR argues that "[c]learly, the practice of medicine is not one of the purposes for which the Partnership was organized" under paragraph 1.7 of the partnership agreement. But the agreement provides that one of the partnership's purposes is "to own, develop, operate and engage in such other business activities as the General Partner may deem appropriate from time to time." Paragraph 1.7 therefore does not establish as a matter of law that "the practice of medicine is not one of the purposes for which the Partnership was organized." The same rationale applies to DHR's argument regarding the purposes stated in RGV's articles of incorporation—though the articles list several corporate purposes, the list is extremely broad and does not purport to be exclusive.

---

[8] This Court is disturbed by the fact that DHR omits the caveat contained in the very sentence of the agreement that it cites to support its position. DHR asserts that "[u]nder the terms of the partnership agreement, limited partners are not permitted to 'perform any act' on behalf of the partnership," and it quotes paragraph 2.4 of the agreement as follows: "The Limited Partners shall not perform any act on behalf of the Partnership; incur any expense, obligation or indebtedness of any nature on behalf of the Partnership; or in any manner participate in the management of the Partnership." The quotation in the brief ends with a period—it does not contain an ellipsis or otherwise indicate that the sentence has been truncated by omission of the caveat. This is grossly misleading, and DHR's position is plainly incorrect, in view of the entirety of the sentence.

Taking as true all evidence favorable to the Andrades, we conclude that DHR did not meet its burden to establish its entitlement to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Joe*, 145 S.W.3d at 157. Accordingly, the trial court did not err by denying DHR's motion for summary judgment.[9]

### III. CONCLUSION

The trial court's order is affirmed.

DORI CONTRERAS GARZA,
Justice

Delivered and filed the
18th day of June, 2015.

---

[9] DHR argues that "[h]ospitals owned by doctors will be faced with an untenable situation if they can be vicariously liable for the negligence of a doctor solely because the doctor has a limited ownership interest in the hospital" and that "[a] finding of vicarious liability under this theory would create novel financial exposure for hospitals owned in whole or in part by medical professionals and threaten their ability to provide medical services to patients needing them." These statements may or may not be true, but in any event, they do not constitute legally cognizable reasons to ignore the plain language of the governing statute, the applicable case law, and the evidence before the court.