ACCEPTED
13-15-00046-CV
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
4/23/2015 2:45:25 PM
DORIAN RAMIREZ
CLERK

NO. 13-15-00046-CV

IN THE COURT OF APPEALS FOR THE
THIRTEENTH DISTRICT OF TEXAS

FILED IN
3th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
4/23/2015 2:45:25 PM
DORIAN E. RAMIREZ
Clerk

DOCTORS HOSPITAL AT RENAISSANCE, LTD. AND RGV MED, LLC,

*Appellants*,

v.

JESUS JAIME ANDRADE AND JESSICA ANDRADE,

*Appellees*.

ON INTERLOCUTORY APPEAL FROM THE 275TH JUDICIAL
DISTRICT COURT OF HIDALGO COUNTY, TEXAS

**BRIEF FOR APPELLANTS
DOCTORS HOSPITAL AT RENAISSANCE, LTD. ET AL.**

Steven Gonzalez
State Bar No. 08131900
Gerald Castillo
State Bar No. 24012399

Richard A. Sheehy
State Bar No. 18178600

Gonzalez Castillo, L.L.P.
1317 E. Quebec Avenue
McAllen, Texas 78503
(956) 618-0115 – Telephone
(956) 618-0455 – Facsimile
E-Mail: sgonzalez@valleyfirm.com
E-Mail: gcastillo@valleyfirm.com

Sheehy, Ware & Pappas, P.C.
2500 Two Houston Center
909 Fannin
Houston, Texas 77002
(713) 951-1000 - Telephone
(713) 951-1199 - Facsimile
Email: rsheehy@sheehyware.com

*Attorneys for Appellants*

**Oral Argument Requested**

*Doctors Hospital at Renaissance et al.*

**Identity of Parties and Counsel**

Pursuant to Rule 38.1(a), Texas Rules of Appellate Procedure, the following is a list of all parties and counsel involved in this case. This list is included so that the Justices of this Court may evaluate possible disqualification or recusal from participation in the decision of this case on appeal:

**Counsel for Defendants and Appellants Doctors Hospital at Renaissance and RGV MED, LLC**

Richard A. Sheehy
State Bar No. 18178600
Email: rsheehy@sheehyware.com

Sheehy, Ware & Pappas, P.C.
2500 Two Houston Center
909 Fannin Street
Houston, Texas  77010
Telephone: (713) 951-1000
Facsimile:   (713) 951-1199

Steven Gonzalez
State Bar No. 08131900
Email: sgonzalez@valleyfirm.com

Gerald Castillo
State Bar No. 24012399
Email: gcastillo@valleyfirm.com

Gonzalez Castillo, L.L.P
1317 E. Quebec Avenue
McAllen, Texas  78503
(956) 618-0115 – Telephone
(956) 618-0455 – Telecopier

**Counsel for Plaintiffs and Appellees Jesus Jaime Andrade and Jessica Andrade**

Timothy Culberson
State Bar No.24012484
Email: info@culbersonlaw.com

The Culberson Law Firm
1400 Woodloch Forest Drive, Suite 575
The Woodlands, Texas  77380
Telephone: (281) 825-4977
Facsimile:  (281) 674-8161

Daniel M.L. Hernandez
State Bar No. 24034479
Email: efiling@hdzfirm.com

Daniel R. Hernandez
State Bar No. 09515690
Email: efiling@hdzfirm.com

Hernandez Law Firm, P.C.
4841 S. Jackson Road
Edinburg, Texas  78539
Telephone: (956) 369-4480
Facsimile:  (956) 822-6001

# Table of Contents

Identity of Parties and Counsel ................................................................................... ii

Table of Contents ................................................................................................. iv

Table of Authorities ...............................................................................................v

Statement of the Case...........................................................................................2

Statement Regarding Oral Argument ........................................................................3

Issues Presented ....................................................................................................3

Statement of Facts ................................................................................................4

Summary of the Argument......................................................................................7

Standard of Review ...............................................................................................9

Argument...............................................................................................................10

    A.    Dr. Lozano was not carrying on the ordinary course of the partnership business. ...............................................................16

    B.    Dr. Lozano cannot carry on the regular course of DHR's business or like business without subjecting DHR to criminal penalties.....................................................................18

    C.    The opinion in *Jones v. Foundation Surgery Affiliates* does not control this case. ...............................................22

Conclusion ...........................................................................................................25

Certificate of Compliance .....................................................................................27

Exhibits:

    A.    Order of trial court certifying questions.

    B.    Order of this Court authorizing appeal.

    C.    Excerpts from Business Organizations Code.

    D.    Excerpts from Occupations Code

# Table of Authorities

**Cases**

*Baptist Memorial Hospital System v. Sampson,*
    969 S.W.2d 945 (Tex. 1998) ................................................................11

*Berel v. HCA Health Services,*
    881 S.W.2d 21 (Tex. App. – Houston [1st Dist.] 1994, writ denied).................10

*Columbia Rio Grande Healthcare v. Hawley,*
    284 S.W.3d 851 (Tex. 2009) ...............................................................10

*Drennan v. Community Health Investment Corp.,*
    905 S.W.2d 811 (Tex. App. – Amarillo 1995, writ denied)........................ 10, 11

*El Paso Natural Gas Co. v. Minco Oil & Gas,*
    8 S.W.3d 309 (Tex. 1999)....................................................................9

*Finley v. Steenkamp,*
    19 S.W.3d 533 (Tex. App. – Fort Worth 2000, no pet.)..................................20

*Gonzalez v. San Jacinto Methodist Hospital,*
    880 S.W.2d 436 (Tex. App. – Texarkana 1994, writ denied) ..........................11

*Jones v. Foundation Surgery Affiliates,*
    403 S.W.3d 306 (Tex. App. -   Houston [1st Dist.] 2013,
    pet. denied)................................................................ 14, 22, 24, 25

*La Sara Grain v. First National Bank,*
    673 S.W.2d 558 (Tex. 1994) ...............................................................21

*Lear Siegler Inc. v. Perez,*
    819 S.W.2d 470 (Tex. 1991) .................................................................9

*Loram Maintenance of Way v. Ianni,*
    210 S.W.3d 593 (Tex. 2006) ...............................................................25

*Matthews Construction Co. v. Rosen,*
    796 S.W.2d 692 (1990)......................................................................25

*Mayhew v. Town of Sunnyvale,*
    964 S.W.2d 922 (Tex. 1998), *cert. denied*, 526 U.S. 1144 (1999) ....................9

*McIntyre v. Ramirez,*
   109 S.W.3d 741 (Tex. 2003) ...............................................................................9

*Nall v. Plunkett,*
   404 S.W.3d 552 (Tex. 2013) ...............................................................................9

*Quick v. City of Austin,*
   7 S.W.3d 109 (Tex. 1998)...................................................................................10

*Romero v. KPH Consolidated,*
   166 S.W.3d 212 (Tex. 2005) ...............................................................................8

*Shaw v. Kennedy,*
   879 S.W.2d 240 (Tex. App. – Amarillo 1994, no writ) .......................................7

*Spindletop MHMR v. Doe,*
   54 S.W.3d 893 (Tex. App. – Beaumont 2001, pet. denied) ...............................20

*State v Heal,*
   917 S.W.2d 6 (Tex. 1996) ..................................................................................10

*Texas South Rentals v. Gomez,*
   267 S.W.3d 228 (Tex. App. – Corpus Christi 2008, no pet.)............................25

*Vibbert v. PAR Inc.,*
   224 S.W.3d 317 (Tex. App. – El Paso 2006, no pet.) ........................................21

**Statutes**

TEX. BUS. ORG. CODE § 1.051 .................................................................................20

TEX. BUS. ORG. CODE §§ 152.301-152.304 ..............................................................4

TEX. BUS. ORG. CODE § 152.301 ........................................................ 4, 12, 21, 22

TEX. BUS. ORG. CODE § 152.302 .............................................................................16

TEX. BUS. ORG. CODE § 152.302(a) .........................................................................13

TEX. BUS. ORG. CODE § 152.302(b).........................................................................13

TEX. BUS. ORG. CODE § 152.303 ............................................................. 13, 16, 21

TEX. BUS. ORG. CODE § 152.0551 ............................................................. 15, 18

TEX. BUS. ORG. CODE § 153.152 ................................................... 4, 7, 10

TEX. CIV. PRAC. & REM. CODE § 51.014(d) ...................................... 3, 7

TEX. CIV. PRAC. & REM. CODE § 51.014(f) ....................................... 3, 7

TEX. GOV'T CODE § 311.001 ............................................................. 20

TEX. GOV'T CODE § 311.021(3) ....................................................... 20

TEX. GOV'T CODE § 311.023(5) ....................................................... 20

TEX. OCC. CODE § 151-165 .............................................................. 13

TEX. OCC. CODE § 151.002 ......................................................... 14, 18

TEX. OCC. CODE § 151.002(a)(13) ........................................ 13, 18, 21

TEX. OCC. CODE § 155.001 ..................................................... 14, 19, 23

TEX. OCC. CODE § 155.003 ..................................................... 14, 19, 23

TEX. OCC. CODE § 164.052(a)(17) ............................................ 14, 19

TEX. OCC. CODE § 165.153 ...................................................... 14, 19

## Rules

TEX. R. APP. P. 9.4(i)(3) ................................................................. 27

TEX. R. APP. P. 38.2(a) ..................................................................... ii

TEX. R. APP. P. 56.1(b) .................................................................. 25

TEX. R. CIV. P. 166a(b) ..................................................................... 9

TEX. R. CIV. P. 168 ............................................................................ 3

NO. 13-15-00046-CV

IN THE COURT OF APPEALS FOR THE
THIRTEENTH DISTRICT OF TEXAS

DOCTORS HOSPITAL AT RENAISSANCE, LTD. AND RGV MED, LLC,

*Appellants*,

v.

JESUS JAIME ANDRADE AND JESSICA ANDRADE,

*Appellees*.

ON INTERLOCUTORY APPEAL FROM THE 275TH JUDICIAL
DISTRICT COURT OF HIDALGO COUNTY, TEXAS

**BRIEF FOR APPELLANTS
DOCTORS HOSPITAL AT RENAISSANCE, LTD. ET AL.**

*To the Honorable Court of Appeals*:

Appellants and Defendants Doctors Hospital at Renaissance, Ltd. ("DHR") and RGV MED, LLC ("RGV") (collectively "Defendants" or "hospital") file this brief to challenge the trial court's denial of a motion for summary judgment in Cause No. C-5886-13-E; *Jesus Jaime Andrade, et al. v. Rodolfo Lozano, M.D., et al.*; in the 275th Judicial District Court of Hidalgo County, Texas, before the Honorable Juan R. Partida, Judge Presiding.

## Statement of the Case

Plaintiffs Jesus Jaime Andrade and Jessica Andrade, individually and as parents and next friends of Julianna Andrade, a minor ("Plaintiffs") brought this action initially against Defendants Rodolfo Lozano, M.D. and Hugo Zapata, M.D., P.A. to recover damages allegedly sustained as the result of medical malpractice during the birth of the minor Plaintiff. (C.R. 20). Later, Plaintiffs amended their petition to name DHR and RGV as Defendants in the case. (C.R. 56). DHR is the partnership that owns and operates the hospital where the delivery took place, and RGV is the general partner of that partnership. (C.R. 415, 416, 477).

Plaintiffs' claims against DHR and RGV are based solely on a theory of vicarious liability because Dr. Lozano was a limited partner in DHR as an investor at the time of the baby's delivery. (C.R. 494, 498)(Plaintiffs' Second Amended Petition)(DHR and RGV "are only liable in this matter under the legal doctrine of vicarious liability under [The Business Organizations Code]."). Plaintiffs do not claim and there is no evidence that DHR or RGV violated any standard of care during the labor and delivery of the child. (*Id.*). Plaintiffs also do not claim that Dr. Lozano was an employee or agent of the hospital based on his status as a member of the medical staff. (*Id.*); *see also* (R.R. 14)(Plaintiffs tell court that traditional theories of liability against the hospital "are not what we have here.").

DHR and RGV filed a motion for summary judgment and argued that they could not be liable to Plaintiffs under Plaintiffs' theory of liability as a matter of law. (C.R. 44). The trial court denied the motion, but found that the motion met the requirements of TEX. CIV. PRAC. & REM. CODE § 51.014(d) and TEX. R. CIV. P. 168 for an interlocutory appeal. (C.R. 521). The court certified the controlling questions of law raised in the motion for summary judgment for review by this Court. (*Id.*); (Exhibit A). This Court then granted DHR and RGVs petition for interlocutory appeal pursuant to Section 51.014(f).  (C.R. 524); (Exhibit B).[1]

## Statement Regarding Oral Argument

DHR and RGV would welcome the chance to present oral argument to the Court on the important and controlling questions of law raised in the petition for interlocutory review and this brief. The issues raised in this appeal are critical for hospitals owned in whole or in part by investor doctors. The decision by this Court may have a significant impact on the continued viability of such hospitals in Texas.

## Issues Presented

(1)    Whether a limited partnership that owns a hospital may be vicariously liable for the alleged professional negligence of a doctor pursuant to TEX. BUS.

---

[1] Plaintiffs settled with Dr. Lozano. (C.R. 66, 513). Plaintiffs later dismissed Dr. Zapata's professional association with prejudice. (C.R. 518). It is not clear if the P.A. paid any consideration for that dismissal but DHR and RGV are currently the only Defendants  remaining in the case.

ORG. CODE §§ 152.301-152.304 and 153.152 solely because a doctor is a limited partner in the limited partnership.

(2)     Whether a general partner of a limited partnership that owns a hospital may be vicariously liable for the alleged professional negligence of a doctor pursuant to TEX. BUS. ORG. CODE §§ 152.301-152.304 and 153.152 solely because a doctor is a limited partner in the limited partnership.[2]

## Statement of Facts

The facts that are relevant to the controlling issues of law in this appeal are relatively simple and not really in dispute. Dr. Rodolfo Lozano delivered Julianna Andrade at Woman's Hospital at Renaissance on August 1, 2012. (C.R. 240, 496). He had treated Jessica Andrade during her pregnancy. (C.R. 118, 171). Plaintiffs claim that the delivery was complicated by a shoulder dystocia which is a condition in which the baby's shoulder is blocked behind the mother's pubic bone during delivery. (C.R. 34, 138). Plaintiffs claim further that the doctor did not follow the appropriate standard of care to deal with that condition, but used excessive twisting and lateral traction on the baby during the delivery. (C.R. 34, 40, 497). As a result of the doctor's actions, Plaintiffs allege that the baby suffered nerve injury during the delivery, and that she now suffers from a permanent

---

[2] The issues presented mirror the controlling issues of law designated by the trial court in its order that permitted this interlocutory appeal. (C.R. 522). Copies of the relevant statutes are attached as exhibits to this brief.

4

neurological injury to her left arm. (C.R. 38, 494). Dr. Lozano was working for Hugo Zapata, M.D., P.A. at the time of the delivery. (C.R. 166).[3]

DHR owns and operates Women's Hospital at Renaissance which is where the delivery took place. (C.R. 102, 240, 415). RGV is the general partner in that partnership. (C.R. 416, 477). The partnership was formed initially in December 2001 to own and operate an ambulatory surgery center in Edinburg. (C.R. 289) (limited partnership agreement); *see also* (C.R. 297)(purpose of partnership is to "develop, construct and operate" health care facilities). DHR now also owns and operates a general acute care hospital. (*Id.*). DHR began offering labor and delivery medical services in 2007 when Women's Hospital at Renaissance opened. (C.R. 102, 275).

Under the terms of the partnership agreement, limited partners are not permitted to "perform any act" on behalf of the partnership. (C.R. 301). Every partner is allowed to engage independently or with other persons in other business ventures including rendering medical services of any kind. (C.R. 173). The doctors who are limited partners may have staff privileges at other hospitals, and may admit and treat patients there. (C.R. 174). "Nothing herein shall prevent any partner from personally performing professional medical services directly for his

---

[3] Whether Dr. Lozano breached a standard of care during the delivery is not an issue in this appeal. He believes that the baby's condition may have occurred *in utero* because of a low level of amniotic fluid in the Mother's womb. (C.R. 154). Regardless, DHR and RGV do not concede that Dr. Zapata breached a standard of care or that any such breach caused the child's injury.

5

or her patients at any hospital or ambulatory surgery center, or healthcare facility." (*Id.*). DHR does not require that investor doctors admit a certain number of patients to the hospital, although other hospitals have that requirement. (C.R. 167); *see* (C.R. 302-3)(limited partnership agreement benefits to partner "are not payment for, and are not in any way contingent upon the referral, admission or any other arrangement for the provision of any item or service" to patients of the partner).

Dr. Lozano became a limited partner at DHR in 2003. (C.R. 162, 275); *see* (C.R. 95)(Dr. Lozano's subscription agreement). He was a limited partner in DHR at the time of Julianna's delivery. (C.R. 240). He has not been involved with the medical board and has had no input into DHR or the hospital's policies. (C.R. 164, 240). He has not read the partnership agreement and cannot say what is in it. (C.R. 392). He has not been to meetings for DHR for several years. (C.R. 164). At best, he is a passive investor in DHR. (*Id.*).

Plaintiffs initially sued Dr. Lozano for professional negligence during the delivery of the Andrade baby. (C.R. 20). They also sued Dr. Zapata's P.A. on a theory of vicarious liability because Dr. Lozano worked for the P.A. at the time of the delivery. (C.R. 20, 109, 494). Later, in an amended petition, they named DHR and RGV as Defendants, claiming that they were also vicariously liable for the acts of Dr. Lozano because he was a limited partner in DHR. (C.R. 56). Plaintiffs do not claim, and there is no evidence, that either DHR or RGV breached any

6

standard of care during the care and treatment of Jessica Andrade or the baby. (*Id.*).[4]

DHR and RGV filed a motion for summary judgment, arguing that they could not be vicariously liable for the acts of Dr. Lozano solely because he was a limited partner in DHR. (C.R. 44). The trial court denied the motion, but agreed with Defendants that there was a substantial ground for difference of opinion on the questions of law raised in the motion. (C.R. 521). The Court also found that an immediate appeal from the order denying the motion may materially advance the ultimate termination of the litigation. (C.R. 522, 523). Defendants then filed a petition for interlocutory review with this Court pursuant to TEX. CIV. PRAC. & REM. CODE § 51.014(d). The Court granted the petition, and allowed DHR and RGV to pursue this interlocutory appeal from the trial court's order. (C.R. 524); *see* Section 51.014(f) (application for permissive appeal).

### Summary of the Argument

Hospitals owned by doctors will be faced with an untenable situation if they can be vicariously liable for the negligence of a doctor solely because the doctor has a limited ownership interest in the hospital. In most cases involving claims of medical malpractice, plaintiffs claim that a hospital has independent liability for

---

[4] Plaintiffs sued RGV because RGV is the general partner in DHR. (C.R. 416, 477); *see* TEX. BUS. ORG. CODE § 153.152 (general powers and liabilities of general partner); *Shaw v. Kennedy*, 879 S.W.2d 240 (Tex. App. – Amarillo 1994, no writ).

7

personal injuries or wrongful death due to the actions of its nurses or administrative staff. This case does not present that situation; Plaintiffs agree that the hospital and the general partner did nothing wrong themselves to cause any injury to Julianna Andrade. There is also no claim that the hospital should not have granted credentials to Dr. Lozano to practice medicine at Women's Hospital. *E.g., Romero v. KPH Consolidated*, 166 S.W.3d 212 (Tex. 2005). DHR and RGV face liability here solely because of the actions of a doctor over whom they had no control. Indeed, they are prohibited by law to exercise any control over any doctor who practices medicine at the hospital.

The Business Organizations Code does not require or provide for vicarious liability for a doctor's acts in this case. A partnership is liable for injuries resulting from a wrongful act or omission or other actionable conduct of a partner only when the partner acts in the ordinary course of business of the partnership or with the authority of the partnership. A hospital provides a location and support services for the doctor to practice medicine; the hospital does not make medical judgments or practice medicine itself. As a result, the Code does not support Plaintiffs' theory of liability.

There are also public policy and other statutory reasons why the hospital should not be liable under these facts. Doctors are generally independent contractors. That status is important so that doctors are free to use their own

8

independent judgment in the care and treatment of their patients. If the hospital can be vicariously liable for the conduct of doctors who practice there, the hospital will be put in a position where it must interfere with the relationship between a doctor and her patient. That result is contrary to both good patient care and the law in Texas prohibiting the corporate practice of medicine. Under Plaintiffs' theory, a hospital can be liable for the acts of an investor doctor but can take no action by law to control the doctor's medical judgment. This Court should reverse the order of the trial court and render judgment for DHR and RGV.

## Standard of Review

A defendant is entitled to summary judgment by showing that plaintiff cannot recover against defendant as a matter of law. TEX. R. CIV. P. 166a(b); *Lear Siegler Inc. v. Perez*, 819 S.W.2d 470 (Tex. 1991). Under Rule 166a(b), a defendant need not defeat all elements of a plaintiff's cause of action; it must defeat only one. *Nall v. Plunkett*, 404 S.W.3d 552 (Tex. 2013).

The issues presented to the trial court and to this Court are questions of law. *McIntyre v. Ramirez*, 109 S.W.3d 741 (Tex. 2003). As a result, the Court should review the trial court's order *de novo*. *El Paso Natural Gas Co. v. Minco Oil & Gas*, 8 S.W.3d 309 (Tex. 1999); *Mayhew v. Town of Sunnydale*, 964 S.W.2d 922 (Tex. 1998), *cert. denied*, 526 U.S. 1144 (1999). Under the *de novo* standard, the Court should conduct an independent analysis of the record and reach its own legal

conclusions. The Court should not give deference to the trial court's ruling. *Quick v. City of Austin*, 7 S.W.3d 109 (Tex. 1998); *State v Heal*, 917 S.W.2d 6 (Tex. 1996).

**Argument**

The only basis for Plaintiffs' claims against DHR and RGV is that DHR and RGV are vicariously liable for the alleged negligent conduct of Dr. Lozano because he was a limited partner of DHR, acting within the course and scope of his partnership, when he delivered Julianna Andrade on August 1, 2012. Further, because RGV is the general partner of DHR, Plaintiffs claim that RGV is also vicariously liable for the alleged negligent acts of Dr. Lozano. Plaintiffs do not claim that DHR or RGV, acting through their employees and staff, caused any harm to Julianna Andrade.[5]

As a preliminary matter, it is settled in Texas that a hospital is generally not vicariously liable for the acts or omissions of a doctor on staff. *Columbia Rio Grande Healthcare v. Hawley*, 284 S.W.3d 851 (Tex. 2009); *Drennan v. Community Health Investment Corp.*, 905 S.W.2d 811 (Tex. App. – Amarillo 1995, writ denied); *Berel v. HCA Health Services*, 881 S.W.2d 21 (Tex. App. – Houston [1st Dist.] 1994, writ denied). The reasoning for this general rule is that a

---

[5] Most of the arguments in this brief will be directed to the claims against DHR because Dr. Lozano was a limited partner in DHR. The arguments apply with equal force as to RGV which is a Defendant only because RGV is the general partner in DHR. (C.R. 494, 498); Tex. Bus. Org. Code § 153.152. RGV adopts DHR's arguments by reference because RGV's liability, if any, is dependent on DHR's liability. (*Id.*).

10

doctor is an independent contractor who uses her own judgment in the care and treatment of her patients. The hospital does not control the details of her work. (*Id.*); *Baptist Memorial Hospital System v. Sampson*, 969 S.W.2d 945 (Tex. 1998).

"That a doctor has staff privileges with a particular hospital and agrees to abide by certain policies and procedures while utilizing a hospital's facilities does not translate into an employment agreement." *Drennan, supra* at 819, *citing Gonzalez v. San Jacinto Methodist Hospital*, 880 S.W.2d 436 (Tex. App. – Texarkana 1994, writ denied). The doctors who practice at Women's Hospital are individually licensed independent contractors. Neither DHR, RGV nor any other investor doctor can control or interfere with a doctor's medical judgment in the treatment of her patients.

Here, Plaintiffs do not claim that Dr. Lozano was an employee or agent of the hospital based on his privileges there. The theory of vicarious liability is based solely on his status as a limited partner and investor in DHR. A review of the relevant statutes and the partnership agreement compels the conclusion that Plaintiffs' theory of liability against DHR and RGV is fatally flawed. The record and the law here show that:

(1)     DHR only provides the facility, staff and equipment to support doctors' medical treatment of their patients;

11

(2)     DHR and its investor doctors do not and cannot exercise control over a doctor's medical judgment and decisions during a patient's labor and delivery;

(3)     The investor doctors cannot perform any act on behalf of DHR; and

(4)     Plaintiffs complain only that Dr. Lozano's medical treatment decisions during the labor and delivery were the cause of the child's injuries.

Dr. Lozano's medical decisions were not made in the ordinary course of DHR's business but in the ordinary course of his own practice. Nothing in the partnership agreement authorizes DHR or RGV to practice medicine. A finding of vicarious liability under this theory would create novel financial exposure for hospitals owned in whole or in part by medical professionals and threaten their ability to provide medical services to patients needing them. *See* (R.R. 14)("But I will say Doctor Lozano was willfully under insured for this severe injury of this little girl. And that's why we're here today.").

**The Texas Business Organizations Code does not impose vicarious liability for DHR and RGV in this case.**

Plaintiffs base their claims against DHR on Chapter 152 of the Texas Business Organizations Code dealing with general partnerships. In particular, they rely on:

- Section 152.301: "Each partner is an agent of the partnership for the purpose of its business."

12

- Section 152.302(a): the actions of a partner in a limited liability partnership bind the partnership so long as the act is apparently for carrying on in the ordinary course of either (a) the partnership business itself; or (b) business of the kind carried on by the partnership.

- Section 152.302(b): if a partner acts outside the scope of the partnership's business, his actions may bind the partnership only if authorized by the other partners.

- Finally, and most relevant here, under Section 152.303, a partnership is liable for injuries resulting from a wrongful act or omission, or other actionable conduct of a partner acting: (1) in the ordinary course of business of the partnership; or (2) with the authority of the partnership.[6]

The Business Organizations Code is not the only law that is relevant to this case. The act of "practicing medicine" is a highly specialized and regulated field governed by the Texas Medical Practices Act in Texas Occupational Code §§ 151-165. Section 151.002(a)(13) defines "practicing medicine" as "the diagnosis, treatment or offer to treat a mental or physical disease or disorder or a physical deformity or injury by any system or method or the attempt to affect course of those conditions."

---

[6] The partnership agreement expressly prohibits a limited partner from acting on behalf of DHR. (C.R. 301). There is no evidence to the contrary in the record. As a result, Plaintiffs' theory of liability under the Business Organizations Code depends on whether Dr. Lozano was acting in the ordinary course of DHR's business or business of the kind carried on by DHR.

Equally as important for purposes here, the Medical Practices Act has strict licensing requirements. Under Sections 155.001 and 155.003, only a "person" may obtain a license to practice medicine. There are no provisions for a corporation or partnership to do so. By law, DHR and RGV are prohibited by law from practicing medicine. *See* TEX. OCC. CODE § 151.002 (definition of "person" as individual unless term expressly applicable to partnerships, associations or corporations); *Jones v. Foundation Surgery Affiliates*, 403 S.W.3d 306, 312 (Tex. App. - Houston [1st Dist.] 2013, pet. denied).

Indeed, under TEX. OCC. CODE § 165.153, persons who practice medicine without a license are subject to criminal penalties. Further, a physician or an applicant for a license to practice medicine commits a prohibitive practice if that person: "directly or indirectly aids or abates the practice of medicine by a person, partnership, association, or cooperation that is not licensed to practice medicine by the Board." TEX. OCC. CODE § 164.052(a)(17). A person is liable for criminal penalties for "additional harm" if he practices medicine without a license and causes harm to another person. (*Id.* at § 165.153). Consistent with the law, neither DHR nor RGV has a license to practice medicine and does not practice medicine; Dr. Lozano does.

14

Finally, the Organizations Code does allow doctors to form professional associations for the practice of medicine. Section 152.0551 provides in relevant part:

(a)    Physicians licensed under Subtitle B, Title 3, Occupations Code may create a partnership to perform a professional service that falls within the scope of practice for those practitioners.

(d)    The authority of each practitioner is limited by the scope of practice of the respective practitioner.

(e)    Nothing in this section may be construed to allow the practice of medicine by someone not licensed as a physician under Subtitle B, Title 3, Occupations Code, or to allow a person not licensed as a physician to direct the activities of a physician in the practice of medicine.

Under this section, no partnership has the ability to control the clinical authority granted by each member's respective license. As such, DHR and RGV cannot rightfully control the manner by which another investor physician practices medicine. Section 152.0551 represents a clear legislative intent to clothe the practice of medicine with independent contractor status.

In summary, Texas law provides that: (1) only those with medical licenses are permitted to practice medicine in Texas; and (2) a limited partnership or limited liability company, in attempting to practice medicine by controlling the manner in

15

which a licensed physician practices medicine, could act in violation of the law, as does any physician who would permit such control.[7]

**A.  Dr. Lozano was not carrying on the ordinary course of the partnership business.**

Plaintiffs must show that Dr. Lozano was acting as a limited partner in DHR when he delivered the Andrade baby. TEX. BUS. ORG. CODE § 152.302 (partner binds partnership if his act is apparently for carrying out partnership business or business of the kind carried on by partnership); (*Id.* at § 152.303)(partnership liable for personal injury to a person only if partner acting in the ordinary course of the partnership business or with the authority of the partnership).  DHR was formed to own and operate Women's Hospital and other medical centers. (C.R. 102, 289). Its stated purpose is to develop, construct and operate health care facilities. (C.R. 297). Its business was not and could not be the actual performance or provision of labor and delivery services; such services must be provided by a doctor. The "practice of medicine" was not a reason why DHR was organized. Plaintiffs simply cannot make their predicate statutory showing.

---

[7] In this trial court, Plaintiffs argued that control was not relevant because their claim of vicarious liability is not based on a theory that Dr. Lozano was an employee or agent of the hospital based on his status as a member of the medical staff; their claim is based on his status as a limited partner in DHR. (C.R. 83-84; R.R. 27). They are half right. Control is not an issue when Plaintiffs do not claim employment or common law agency status; however, control is relevant to show that the sections of the Business Organizations Code at issue do not and should not apply. *See* ( R.R. 32).

Regardless of Dr. Lozano's status as a limited partner of DHR, for the purpose of providing medical care and treatment, Dr. Lozano is an independent contractor who must use his own professional skills and judgment in the care and treatment of his patients. The Limited Partnership Agreement expressly prohibits Dr. Lozano from taking any action on behalf of DHR (C.R. 301)("The Limited Partners shall not perform any act on behalf of the Partnership; incur any expense, obligation or indebtedness of any nature on behalf of the Partnership; or in any manner participate in the management of the Partnership."). Clearly, when Dr. Lozano was performing obstetrical services at DHR on August 1, 2012 those services were not on behalf of the partnership. He was not acting within the course and scope of his partnership business, but was providing medical care in accordance with his medical license, over which DHR and RGV had no control.

Plaintiffs here must show that Dr. Lozano's treatment decisions during labor and delivery of the baby were in the ordinary course of DHR's business. To the contrary, Dr. Lozano's independent practice of medicine and DHR's business are not the same. DHR provides a facility with a nursing and administrative staff, supplies and equipment where doctors or the medical staff may treat their patients and perform necessary medical procedures. Dr. Lozano is a passive investor in DHR; he has no control over its operations or management. He is prohibited from taking any action to bind DHR or the other partners. He is not required to admit

any patients at Women's Hospital and may have privileges at any other hospital. His medical decisions and judgment at the time of Julianna's delivery in August 2012 had nothing to do with the ordinary course of DHR's business or kind of business. "Practicing medicine" is simply not DHR or RGV's business. TEX. OCC. CODE § 151.002(a)(13) (definition of "practicing medicine").

This conclusion is also compelled by statute. TEX. BUS. ORG. CODE §152.0551 states "[nothing in this section may be construed to allow the practice of medicine by someone not licensed as a physician under Subtitle B, Title 3, Occupations Code or to allow a person not licensed as a physician to direct the activities of a physician in the practice of medicine." This section prohibits DHR and RGV from exercising any control over Dr. Lozano's actions. Dr. Lozano cannot and could not be acting in the course of DHR's business under the terms of the partnership agreement and the relevant statutes. The Business Organizations Act by its terms does not apply to impose vicarious liability on DHR or RGV.

**B. Dr. Lozano cannot carry on the regular course of DHR's business or like business without subjecting DHR to criminal penalties.**

The record and the law establish the following:

- Plaintiffs' claim against Dr. Lozano was based on his care and treatment of Jessica and Julianna Andrade which is the "practice of medicine." TEX. OCC. CODE § 151.002(a)(13); (C.R. 494).

18

- The practice of medicine requires a license. TEX. OCC. CODE §§ 155.001, 155.003; (*Supra* at 13).

- A person commits a crime if he or she practices medicine without a license. TEX. OCC. CODE § 165.153; (*Supra* at 14).

- A person commits a crime if he or she aids or abets the practice of medicine without a license. TEX. OCC. CODE § 164.052(a)(17); (*Supra* at 14).

- A person is liable for criminal penalties for "additional harm" if he or she practices medicine without a license and causes another person physical or psychological harm. TEX. OCC. CODE § 165.153.

- Only an individual person may hold a license to practice medicine; a corporation or partnership cannot. TEX. OCC. CODE §§ 155.001, 155.003; (*Supra* at 13).

The trial court's order, if allowed to stand, potentially puts the hospital in violation of law. By definition, if Dr. Lozano was acting in the ordinary course of DHR's business, which is required by Plaintiffs' theory under the Business Organizations Act, then DHR must be in the business of "practicing medicine," which it does not and cannot do. As discussed above, the partnership agreement shows that DHR supplies a location and a support staff to allow doctors to practice medicine; it prohibits doctors from acting for DHR but allows them to admit patients elsewhere. (*Supra* at 5).

If a doctor is "in the ordinary course of business" of a hospital simply because she is a passive investor there, that investment alone means the hospital is practicing medicine in violation of law. The hospital then must either reject doctors as investors or violate the law. Neither option is proper as a matter of law or public policy. The third and preferable option is for the Court to reconcile the relevant sections of the Business Organizations Code and the Occupations Code and hold that a doctor who practices medicine is not in the course of a hospital's business. This option makes good sense especially when the partnership agreement for the owner of the hospital prohibits the investor doctor from acting for the owner.

The Code Construction Act applies to interpret the Business Organizations Code. TEX. BUS. ORG. CODE § 1.051; *see* TEX. GOV'T CODE § 311.001 *et seq.* (Code Construction Act). The Court may and should consider the consequences of a particular construction when it interprets and applies a statute. TEX. GOV'T CODE § 311.023(5); *Finley v. Steenkamp*, 19 S.W.3d 533 (Tex. App. – Fort Worth 2000, no pet.)(Court must consider consequences of construction of statute and avoid absurd results); *Spindletop MHMR v. Doe*, 54 S.W.3d 893 (Tex. App. – Beaumont 2001, pet. denied)(consequences of a particular construction is an important aid to statutory meaning); *see also* TEX. GOV'T CODE § 311.021(3)(Court should presume a just and reasonable result); (*Id.* at (4))(Court should presume a result feasible of execution). Of course, courts should also construe statutes to harmonize them. *La*

*Sara Grain v. First National Bank*, 673 S.W.2d 558 (Tex. 1994); *Vibbert v. PAR Inc.*, 224 S.W.3d 317 (Tex. App. – El Paso 2006, no pet.).

Applying TEX. BUS. ORG. CODE § 152.301 – 152.303 to a situation involving a passive investor doctor accused of negligence would result in an unreasonable result, that is, that DHR was practicing medicine because that is what Dr. Lozano was doing. Yet, DHR and RGV cannot practice medicine. Equally as important, the trial court's decision would force a hospital to get intimately involved in the relationship between a doctor and her patient. The legislature could not have intended the Business Organizations Code to apply to the acts of a doctor simply because the doctor is a passive and limited investor in the owner of the hospital. Plaintiffs' view raises serious criminal and public policy issues that the Courts may avoid by holding simply that Dr. Lozano was not carrying on the ordinary course of DHR's business or DHR's kind of business when he was practicing medicine. Indeed, the very agreement that defines his relationship with DHR prohibits Dr. Lozano from acting for DHR.[8]

---

[8] Plaintiffs incorrectly claim that DHR and RGV admitted that the purpose of the partnership was to provide obstetrical services. (C.R. 77); *see* (C.R. 275) (responses to interrogatories). The interrogatory responses simply indicate that Women's Hospital was offering labor and delivery services to the public at the time of Julianna's birth; they do not state that the hospital was practicing medicine. In fact, the purpose of the partnership is defined in Section 1.7 of the Limited Partnership Agreement that provides in relevant part that: "the purpose for which the partnership is organized is to develop, construct, and operate such Health Care Facilities as the General Partner may deem appropriate from time to time." Clearly, the practice of medicine is not one of the purposes for which the Partnership was organized. DHR was not "practicing medicine" as that term is defined in Section 151.002(a)(13) of the Occupations Code.

**C.**    **The opinion in *Jones v. Foundation Surgery Affiliates* does not control this case.**

As the trial court noted in its order permitting this interlocutory appeal, the only case found by the parties in Texas or around the country that discussed liability based on the acts of investor doctors is *Jones v. Foundation Surgery Affiliates of Brazoria County*, 403 S.W.3d 306 (Tex. App. – Houston [1st Dist.] 2013, pet. denied), which was not decided by this Court.  (C.R. 522). Plaintiffs relied heavily on this opinion in their response to Defendants' motion for summary judgment. (C.R. 69, 73-76). Plaintiffs' reliance on that opinion is misplaced; it certainly does not control the resolution of this case.

In *Jones*, Henry Martinez, M.D. performed gall bladder surgery on Amanda Jones at Foundation Surgery Affiliates ("surgery center") in August 2007. Dr. Martinez became a partner in the surgery center in November 2006. Plaintiffs claimed generally that Dr. Martinez was negligent in the care and treatment of Jones during the surgery. Plaintiffs sued the surgery center based on the doctor's status as a limited partner. The trial court granted the surgery center's motion for summary judgment.

The Court of Appeals reversed and held there was a fact question whether Dr. Martinez was acting in the ordinary course of the surgery center's business when Jones was injured. In reaching this decision, the Court reviewed the doctor's subscription agreement with the surgery center at length. (*Id.* at 309). The Court

emphasized that the surgery center required Dr. Martinez to perform at least one-third of his surgeries and derive one-third of his income there so he could share his profits with other partners. (*Id.*). The Court even mentioned that requirement twice in the opinion. (*Id.* at 309, 317). The Court also relied on the surgery center's filing with the Secretary of State that reflected the surgery center's business. Perhaps most critically, the subscription agreement expressly stated that the surgery center had some control over the actions of doctors who treated their patients at the surgery center. (*Id.* at 317). Plaintiffs in that case even presented evidence that the surgery center had expressly authorized Dr. Martinez to perform the gall bladder surgery. With that record, the Court's finding that Plaintiffs presented a "genuine issue of material fact" is perhaps not surprising.[9]

The situation here is far different. The partnership agreement specifically prohibits an investor doctor from performing any acts on behalf of the partnership. (C..R. 301)("The Limited Partners shall not perform any act on behalf of the Partnership."). It also clearly and expressly allows an investor doctor to perform surgeries and admit patients wherever she wants without any requirement that the doctor admit a certain number of patients to Women's Hospital. (C.R. 302)("No

---

[9] During the course of the opinion, the Court referenced the surgery center's argument that the surgery center could not be liable to Plaintiffs solely because Dr. Martinez was a limited partner because it was not and could not be licensed to practice medicine. (*Id.* at 314); *see* TEX. OCC. CODE § 155.001, 155.003; *see also* (*Supra* at 18). The Court did not discuss this argument in any detail in the opinion, but simply held that the partnerships filings and subscription agreement raised a fact question. (*Id.* at 315).

Partner who is a physician shall be prohibited from maintaining his or her staff privileges and admitting and treating patients at any other hospital or ambulatory surgery center" or receiving payment for those services); (*Id.*)("Nothing herein shall prevent any Partner from personally performing professional medical services directly for his or her patients at any hospital or ambulatory surgery center, or healthcare facility."); (*Id.* at 303)("Nothing herein is intended to prohibit any party from practicing medicine at any other facility"); (C.R. 167, 303)(benefits to doctors not contingent "in any way" upon referral or admission of patients to hospital). And, unlike the situation in *Jones*, Dr. Lozano's subscription agreement does not give DHR any control over his medical practice, and the filings in the record with the Secretary of State do not reflect any specific business of DHR. (C.R. 91-94, 102, 477, 484); (R.R. 18)(Plaintiffs admit filings with Secretary of State are silent so they do not have the same evidence as in *Jones*). Even the partnership agreement here makes it clear that DHR does not control Dr. Lozano's medical practice, but simply "owns and operates" Women's Hospital.

These factual distinctions are enough to distinguish *Jones* and show that it is not persuasive precedent for this case, especially given the Court's almost exclusive reliance on documents with very different terms than the subscription and partnership agreement here. Even so, it is apparent from the opinion that the surgery center there did not raise, or the Court did not decide, arguments by DHR

24

and RGV here. *E.g.*, (*Supra* at 23 n. 9). Finally, if indeed the Court decides that *Jones* is factually similar to this case, which is unlikely, DHR and RGV submit that *Jones* was wrongly decided.[10]

**Conclusion**

This Court should reverse the order denying DHR and RGV's motion for summary judgment and render judgment that Plaintiffs take nothing from DHR and RGV.

---

[10] It the trial court, Plaintiffs state that *Jones* is "strong precedent" because the Supreme Court denied the surgery center's petition for review. (C.R. 73); *see also* (R.R. 17)("And so the Supreme Court looked at it, said we don't need to mess with that opinion. It is good law."). Plaintiffs are clearly wrong. Declining to review a case is no evidence that the Supreme Court agrees with the law as decided by the Court of Appeals. *Loram Maintenance of Way v. Ianni*, 210 S.W.3d 593 (Tex. 2006). "The denial or dismissal of a petition does not give any indication of this Court's decision on the merits of the case." (*Id.* at 596), *citing* TEX. R. APP. P. 56.1(b); *Matthews Construction Co. v. Rosen*, 796 S.W.2d 692, 694 n. 2 (1990); *see also Texas South Rentals v. Gomez*, 267 S.W.3d 228, 239 n. 8 (Tex. App. – Corpus Christi 2008, no pet.)("A denial of review or a dismissal of a petition for want of jurisdiction by the Texas Supreme Court is not a comment on the correctness of the Court of Appeals' opinion below, although parties often argue as much.").

Respectfully submitted,

Steven Gonzalez
State Bar No. 08131900
Gerald Castillo
State Bar No. 24012399

Gonzalez Castillo, L.L.P.
1317 E. Quebec Avenue
McAllen, Texas 78503
(956) 618-0115 – Telephone
(956) 618-0455 – Telecopier
E-Mail: sgonzalez@valleyfirm.com
E-Mail: gcastillo@valleyfirm.com

SHEEHY, WARE & PAPPAS, P.C.

By:_____
        Richard A. Sheehy
        State Bar No. 18178600
2500 Two Houston Center
909 Fannin Street
Houston, Texas 77010-1003
(713) 951-1000 – Telephone
(713) 951-1199 – Facsimile
E-mail: rsheehy@sheehyware.com

***Attorneys for Appellants and Defendants
Doctors Hospital at Renaissance, Ltd. and
RGV MED, LLC***

26

## Certificate of Compliance

Pursuant to Rule 9.4(i)(3), I certify that this Brief for Appellants, beginning with the Statement of Facts, and ending after the Conclusion, contains 5,490 words, as measured by a computer program used to prepare the brief.

*[signature]*

Richard A. Sheehy

## Certificate of Service

This will certify that a true and correct copy of this document has been forwarded to all counsel of record pursuant to the Texas Rules of Appellate Procedure on the 23rd day of April 2015.

Timothy Culberson                              *Via E-Service*
The Culberson Law Office, PLLC
1400 Woodloch Forest Drive, Suite 575
The Woodlands, Texas  77380

Daniel M.L. Hernandez                       *Via E-Service*
Hernandez Law Firm, P.C.
4841 S. Jackson Road
Edinburg, Texas  78539

Steven Gonzalez                               *Via E-Service*
Gerald Castillo
Gonzalez Castillo, L.L.P.
1317 E. Quebec Avenue
McAllen, Texas  78503

*[signature]*

Richard A. Sheehy

2300502

27

# EXHIBIT A

CAUSE NO. 5886-13-E

| | | |
|---|---|---|
| JESUS JAIME ANDRADE AND JESSICA ANDRADE, INDIVIDUALLY AND AS PARENTS AND NEXT FRIENDS OF JULIANNA ANDRADE, A MINOR | § § § § § | IN THE DISTRICT COURT |
| *Plaintiffs,* | § § | |
| v. | § § | 275TH JUDICIAL DISTRICT |
| RODOLFO LOZANO, M.D., HUGO ZAPATA, M.D., P.A., DOCTORS HOSPITAL AT RENAISSANCE, LTD. AND RGV MED, LLC, | § § § § § | |
| *Defendants.* | § | HIDALGO COUNTY, TEXAS |

## ORDER

On November 13, 2014, the Court considered the Motion of Defendants Doctors Hospital at Renaissance, Ltd. and RGV Med, LLC for Summary Judgment. All parties received notice of the hearing pursuant to the Texas Rules of Civil Procedure and were represented by and through their attorneys of record. The Court has considered the motion, the response to the motion, the reply to the response, Plaintiffs' summary judgment evidence, and all matters of record. The Court has also heard the argument of counsel. The Court is of the opinion that the motion should be denied. As the basis for this ruling, the Court holds as a matter of law that:

1.  A limited partnership that owns a hospital may be vicariously liable for the alleged professional negligence of a doctor pursuant to TEX. BUS. ORG. CODE §§152.301-152.304 and 153.152 solely because the doctor is a limited partner in the limited partnership; and

2.  A general partner of a limited partnership that owns a hospital may be vicariously liable for the alleged professional negligence of a doctor pursuant to TEX. BUS. ORG. CODE §§152.301-152.304 and 153.152 solely because the doctor is a limited partner in the limited partnership.

At the request of Defendants Doctors Hospital at Renaissance, Ltd. and RGV Med, LLC, the Court will permit an appeal from this Order pursuant to TEX. CIV. PRAC. & REM. CODE §51.014(d) and Texas Rule of Civil Procedure 168. The Court finds that this Order involves controlling questions of law as to which there is a substantial ground for difference of opinion and that an immediate appeal from this Order may materially advance the ultimate termination of the litigation. The controlling issues of law are:

1. Whether a limited partnership that owns a hospital may be vicariously liable for the alleged professional negligence of a doctor pursuant to TEX. BUS. ORG. CODE §§152.301-152.304 and 153.152 solely because the doctor is a limited partner in the limited partnership?

2. Whether a general partner of a limited partnership that owns a hospital may be vicariously liable for the alleged professional negligence of a doctor pursuant to TEX. BUS. ORG. CODE §§152.301-152.304 and 153.152 solely because the doctor is a limited partner in the limited partnership?

The Court finds that there is a substantial ground for difference of opinion on these questions of law. The Court and the parties have been unable to find any law in Texas or around the country that deals with these issues except for the opinion by the Court in *Jones v. Foundation Surgery Affiliates of Brazoria County*, 403 S.W.3d 306 (Tex. App. – Houston [1st Dist.] 2013, pet. denied.). That case was not decided by the Court of Appeals for the Thirteenth Judicial District. The resolution of the legal issues presented in the Motion for Summary Judgment may have a significant impact on the law of medical malpractice in Texas.

The Court also finds that an immediate appeal from this Order may materially advance the ultimate termination of this litigation because Doctors Hospital at Renaissance, Ltd. and RGV Med, LLC would be entitled to summary judgment if the answers to these controlling

questions of law are in the negative. The Court and the parties would then avoid a full trial on the merits of the claims in this case. Therefore, it is

ORDERED that the Motion for Defendants Doctors Hospital at Renaissance, Ltd. and RGV Med, LLC for Summary Judgment is denied. Further, it is

ORDERED that the Court permits an appeal from this Order that would otherwise not be appealable pursuant to TEX. CIV. PRAC. & REM. CODE § 51.014(d) and Texas Rule of Civil Procedure 168. Further, it is

ORDERED that all proceedings in this case in this Court are stayed pending further Order of the Court.

SIGNED this _16th_ day of January 2015.

_____
Judge Presiding

523

# EXHIBIT B



NUMBER 13-15-00046-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

DOCTORS HOPSITAL AT RENAISSANCE, LTD.
AND RGV MED, LLC,                                                Appellants,

v.

JESUS JAIME ANDRADE AND
JESSICA ANDRADE,                                                Appellees.

On Petition for Permissive Appeal from the
275th District Court of Hidalgo County, Texas.

# ORDER

**Before Chief Justice Valdez and Justices Rodriguez and Garza**
**Order Per Curiam**

Doctors Hospital at Renaissance, Ltd., and RGV MED, LLC have filed a petition

for permissive interlocutory appeal challenging the trial court's denial of summary

judgment in trial court cause number 5886-13-E.  *See* TEX. R. APP. P. 28.3; TEX. CIV.

PRAC. & REM. CODE ANN. § 51.014(d), (f).  The trial court plaintiffs, Jesus Jaime Andrade

and Jessica Andrade, have filed a response stating that they are unopposed to the petition for permissive appeal.

This Court, having examined and fully considered the petition and response, is of the opinion that the petition should be granted. Accordingly, we GRANT permission to appeal. A notice of appeal is deemed to have been filed on this date. *See* TEX. R. APP. P. 28.3(k). The appeal will be governed by the rules for accelerated appeals. *Id.*; *see* TEX. R. APP. P. 28.1.

We direct the clerk of this Court to file a copy of this order with the trial court clerk. *See* TEX. R. APP. P. 28.3(k).

IT IS SO ORDERED.

PER CURIAM

Delivered and filed the
2nd day of March, 2015.

2

# EXHIBIT C



C

**Effective: January 1, 2006**

Vernon's Texas Statutes and Codes Annotated Currentness
  **Business Organizations** Code (Refs & Annos)
    Title 4. Partnerships (Refs & Annos)
      Chapter 152. General Partnerships
        Subchapter E. Relationship Between Partners and Other Persons
          → → § **152. 301. Partner as Agent**

Each partner is an agent of the partnership for the purpose of its **business**.

CREDIT(S)

Acts 2003, 78th Leg., ch. 182, § 1, eff. Jan. 1, 2006.

Current through the end of the 2013 Third Called Session of the 83rd Legislature

(C) 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.



C

**Effective: September 1, 2007**

Vernon's Texas Statutes and Codes Annotated Currentness
  Business Organizations Code (Refs & Annos)
    Title 4. Partnerships (Refs & Annos)
      Chapter 152. General Partnerships
        Subchapter E. Relationship Between Partners and Other Persons
          **§ 152.302. Binding Effect of Partner's Action**

(a) Unless a partner does not have authority to act for the partnership in a particular matter and the person with whom the partner is dealing knows that the partner lacks authority, an act of a partner, including the execution of an instrument in the partnership name, binds the partnership if the act is apparently for carrying on in the ordinary course:

  (1) the partnership business; or

  (2) business of the kind carried on by the partnership.

(b) An act of a partner that is not apparently for carrying on in the ordinary course a business described by Subsection (a) binds the partnership only if authorized by the other partners.

(c) A conveyance of real property by a partner on behalf of the partnership not otherwise binding on the partnership binds the partnership if the property has been conveyed by the grantee or a person claiming through the grantee to a holder for value without knowledge that the partner exceeded that partner's authority in making the conveyance.

CREDIT(S)

Acts 2003, 78th Leg., ch. 182, § 1, eff. Jan. 1, 2006. Amended by Acts 2007, 80th Leg., ch. 688, § 105, eff. Sept. 1, 2007.

Current through the end of the 2013 Third Called Session of the 83rd Legislature

(C) 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.



**c**

**Effective: January 1, 2006**

Vernon's Texas Statutes and Codes Annotated Currentness
  Business Organizations Code (Refs & Annos)
    Title 4. Partnerships (Refs & Annos)
      ⌐⊞ Chapter 152. General Partnerships
        ⌐⊞ Subchapter E. Relationship Between Partners and Other Persons
          ➙➙ **§ 152.303. Liability of Partnership for Conduct of Partner**

(a) A partnership is liable for loss or injury to a person, including a partner, or for a penalty caused by or incurred as a result of a wrongful act or omission or other actionable conduct of a partner acting:

  (1) in the ordinary course of business of the partnership; or

  (2) with the authority of the partnership.

(b) A partnership is liable for the loss of money or property of a person who is not a partner that is:

  (1) received in the course of the partnership's business; and

  (2) misapplied by a partner while in the custody of the partnership.

CREDIT(S)

Acts 2003, 78th Leg., ch. 182, § 1, eff. Jan. 1, 2006.

Current through the end of the 2013 Third Called Session of the 83rd Legislature

(C) 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

C

**Effective: January 1, 2006**

Vernon's Texas Statutes and Codes Annotated Currentness
  **Business Organizations** Code (Refs & Annos)
    Title 4. Partnerships (Refs & Annos)
      Chapter 153. Limited Partnerships (Refs & Annos)
        Subchapter D. General Partners
          **§ 153. 152. General Powers and Liabilities of General Partner**

(a) Except as provided by this chapter, the other limited partnership provisions, or a partnership agreement, a general partner of a limited partnership:

(1) has the rights and powers and is subject to the restrictions of a partner in a partnership without limited partners; and

(2) has the liabilities of a partner in a partnership without limited partners to the partnership and to the other partners.

(b) Except as provided by this chapter or the other limited partnership provisions, a general partner of a limited partnership has the liabilities of a partner in a partnership without limited partners to a person other than the partnership and the other partners.

CREDIT(S)

Acts 2003, 78th Leg., ch. 182, § 1, eff. Jan. 1, 2006.

HISTORICAL AND STATUTORY NOTES

2012 Main Volume

Prior Laws:

  Vernon's Ann.Civ.St. art. 6132a-1, § 4.03.

LIBRARY REFERENCES

2012 Main Volume

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.



C

**Effective: June 17, 2011**

Vernon's Texas Statutes and Codes Annotated Currentness
  Business Organizations Code (Refs & Annos)
    Title 4. Partnerships (Refs & Annos)
      Chapter 152. General Partnerships
        Subchapter B. Nature and Creation of Partnership
          →→ **§ 152. 0551. Partnerships Formed by Physicians and Physician Assistants**

(a) Physicians licensed under Subtitle B, Title 3, **Occupations** Code, [FN1] and physician assistants licensed under Chapter 204, **Occupations** Code, may create a partnership to perform a professional service that falls within the scope of practice of those practitioners.

(b) A physician assistant may not be a general partner or participate in the management of the partnership.

(c) A physician assistant may not contract with or employ a physician to be a supervising physician of the physician assistant or of any physician in the partnership.

(d) The authority of each practitioner is limited by the scope of practice of the respective practitioner. An organizer of the entity must be a physician and ensure that a physician or physicians control and manage the entity.

(e) Nothing in this section may be construed to allow the practice of medicine by someone not licensed as a physician under Subtitle B, Title 3, **Occupations** Code, or to allow a person not licensed as a physician to direct the activities of a physician in the practice of medicine.

(f) A physician assistant or combination of physician assistants may have only a minority ownership interest in an entity created under this section. The ownership interest of an individual physician assistant may not equal or exceed the ownership interest of any individual physician owner. A physician assistant or combination of physician assistants may not interfere with the practice of medicine by a physician owner or the supervision of physician assistants by a physician owner.

(g) The Texas Medical Board and the Texas Physician Assistant Board continue to exercise regulatory authority over their respective license holders according to applicable law. To the extent of a conflict between Subtitle B, Title 3, **Occupations** Code, and Chapter 204, **Occupations** Code, or any rules adopted under those statutes, Subtitle B, Title 3, or a rule adopted under that subtitle controls.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

CREDIT(S)

Added by Acts 2011, 82nd Leg., ch. 782 (H.B. 2098), § 2, eff. June 17, 2011.


[FN1] V.T.C.A., **Occupations** Code § 151.001 et seq.

Current through the end of the 2013 Third Called Session of the 83rd Legislature

(C) 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

# EXHIBIT D



C

**Effective: June 14, 2013**

Vernon's Texas Statutes and Codes Annotated Currentness
 **Occupations** Code (Refs & Annos)
  Title 3. Health Professions
   Subtitle B. Physicians
    Chapter 151. General Provisions (Refs & Annos)
     Subchapter A. General Provisions
      →→ **§ 151. 002. Definitions**

(a) In this subtitle:

(1) "Board" means the Texas Medical Board.

(2) "Continuing threat to the public welfare" means a real danger to the health of a physician's patients or to the public from the acts or omissions of the physician caused through the physician's lack of competence, impaired status, or failure to care adequately for the physician's patients, as determined by:

 (A) the board;

 (B) a medical peer review committee in this state;

 (C) a physician licensed to practice medicine in this state or otherwise lawfully practicing medicine in this state;

 (D) a physician engaged in graduate medical education or training; or

 (E) a medical student.

(3) "Disciplinary order" means an action taken under Section 164.001, 164.053, 164.058, or 164.101.

(4) "Doctor of osteopathic medicine" includes a doctor of osteopathy, an osteopath, an osteopathic physician, and an osteopathic surgeon.

(5) "Health care entity" means:

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

(A) a hospital licensed under Chapter 241 or 577, Health and Safety Code;

(B) an entity, including a health maintenance organization, group medical practice, nursing home, health science center, university medical school, hospital district, hospital authority, or other health care facility, that:

   (i) provides or pays for medical care or health care services; and

   (ii) follows a formal peer review process to further quality medical care or health care;

(C) a professional society or association of physicians, or a committee of such a society or association, that follows a formal peer review process to further quality medical care or health care;

(D) an organization established by a professional society or association of physicians, hospitals, or both, that:

   (i) collects and verifies the authenticity of documents and other information concerning the qualifications, competence, or performance of licensed health care professionals; and

   (ii) acts as a health care facility's agent under the Health Care Quality Improvement Act of 1986 (42 U.S.C. Section 11101 et seq.); or

(E) a health care collaborative certified under Chapter 848, Insurance Code.

(6) "Legally authorized representative" of a patient means:

   (A) a parent or legal guardian if the patient is a minor;

   (B) a legal guardian if the patient has been adjudicated incompetent to manage the patient's personal affairs;

   (C) an agent of the patient authorized under a durable power of attorney for health care;

   (D) an attorney ad litem appointed for the patient;

   (E) a guardian ad litem appointed for the patient;

   (F) a personal representative or statutory beneficiary if the patient is deceased; or

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

(G) an attorney retained by the patient or by another person listed by this subdivision.

(6-a) "License holder" means a person holding a license, permit, or certificate issued under this subtitle.

(7) "Medical peer review" or "professional review action" means the evaluation of medical and health care services, including evaluation of the qualifications and professional conduct of professional health care practitioners and of patient care provided by those practitioners. The term includes evaluation of the:

(A) merits of a complaint relating to a health care practitioner and a determination or recommendation regarding the complaint;

(B) accuracy of a diagnosis;

(C) quality of the care provided by a health care practitioner;

(D) report made to a medical peer review committee concerning activities under the committee's review authority;

(E) report made by a medical peer review committee to another committee or to the board as permitted or required by law; and

(F) implementation of the duties of a medical peer review committee by a member, agent, or employee of the committee.

(8) "Medical peer review committee" or "professional review body" means a committee of a health care entity, the governing board of a health care entity, or the medical staff of a health care entity, that operates under written bylaws approved by the policy-making body or the governing board of the health care entity and is authorized to evaluate the quality of medical and health care services or the competence of physicians, including evaluation of the performance of those functions specified by Section 85.204, Health and Safety Code. The term includes:

(A) an employee or agent of the committee, including an assistant, investigator, intervenor, attorney, and any other person or organization that serves the committee; and

(B) the governing body of a public hospital owned or operated by a governmental entity, the governing body of a hospital authority created under Chapter 262 or 264, Health and Safety Code, and the governing body of a hospital district created under Article IX, Texas Constitution, but only:

(i) in relation to the governing body's evaluation of the competence of a physician or the quality of medic-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

al and health care services provided by the public hospital, hospital authority, or hospital district; and

(ii) to the extent that the evaluation under Subparagraph (i) involves discussions or records that specifically or necessarily identify an individual patient or physician.

(9) "Medical records" means all records relating to the history, diagnosis, treatment, or prognosis of a patient.

(10) "Operation" means the application of surgery or the performance of surgical services.

(11) "Person" means an individual, unless the term is expressly made applicable to a partnership, association, or corporation.

(12) "Physician" means a person licensed to practice medicine in this state.

(13) "Practicing medicine" means the diagnosis, treatment, or offer to treat a mental or physical disease or disorder or a physical deformity or injury by any system or method, or the attempt to effect cures of those conditions, by a person who:

(A) publicly professes to be a physician or surgeon; or

(B) directly or indirectly charges money or other compensation for those services.

(14) "Surgery" includes:

(A) surgical services, procedures, and operations; and

(B) the procedures described in the surgery section of the common procedure coding system as adopted by the Health Care Financing Administration of the United States Department of Health and Human Services.

(b) The terms "physician" and "surgeon" are synonyms. As used in this subtitle, the terms "practitioner" and "practitioner of medicine" include physicians and surgeons.

CREDIT(S)

Acts 1999, 76th Leg., ch. 388, § 1, eff. Sept. 1, 1999. Amended by Acts 2001, 77th Leg., ch. 1420, § 14.021(a), eff. Sept. 1, 2001; Acts 2003, 78th Leg., ch. 202, § 1, eff. June 10, 2003; Acts 2005, 79th Leg., ch. 269, § 1.01, eff. Sept. 1, 2005; Acts 2011, 82nd Leg., 1st C.S., ch. 7 (S.B. 7), § 4.06, eff. Sept. 28, 2011; Acts 2013, 83rd Leg., ch. 1180 (S.B. 949), § 1, eff. June 14, 2013.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.



C

**Effective:[See Text Amendments]**

Vernon's Texas Statutes and Codes Annotated Currentness
 **Occupations** Code (Refs & Annos)
  Title 3. Health Professions
   Subtitle B. Physicians
    Chapter 155. License to Practice Medicine (Refs & Annos)
     Subchapter A. License Requirements
      ➡➡ **§ 155. 001. License Required**

A person may not practice medicine in this state unless the person holds a license issued under this subtitle.

CREDIT(S)

Acts 1999, 76th Leg., ch. 388, § 1, eff. Sept. 1, 1999.

Current through the end of the 2013 Third Called Session of the 83rd Legislature

(C) 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.


Westlaw.

C

**Effective: September 1, 2011**

Vernon's Texas Statutes and Codes Annotated Currentness
   Occupations Code (Refs & Annos)
      Title 3. Health Professions
         Subtitle B. Physicians
            ᴺ Chapter 155. License to Practice Medicine (Refs & Annos)
               ᴺ Subchapter A. License Requirements
                  ➜➜ **§ 155.003. General Eligibility Requirements**

(a) To be eligible for a license under this chapter, an applicant must present proof satisfactory to the board that the applicant:

(1) is at least 21 years of age;

(2) is of good professional character and has not violated Section 164.051, 164.052, or 164.053;

(3) has completed:

(A) at least 60 semester hours of college courses, other than courses in medical school, that are acceptable to The University of Texas at Austin for credit on a bachelor of arts degree or a bachelor of science degree;

(B) the entire primary, secondary, and premedical education required in the country of medical school graduation, if the medical school is located outside the United States or Canada; or

(C) substantially equivalent courses as determined by board rule;

(4) is a graduate of a medical school located in the United States or Canada and approved by the board;

(5) has either:

(A) successfully completed one year of graduate medical training approved by the board in the United States or Canada; or

(B) graduated from a medical school located outside the United States or Canada and has successfully com-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

pleted two years of graduate medical training approved by the board in the United States or Canada;

(6) has passed an examination accepted or administered by the board; and

(7) has passed a Texas medical jurisprudence examination as determined by board rule.

(b) All medical or osteopathic medical education an applicant receives in the United States must be accredited by an accrediting body officially recognized by the United States Department of Education as the accrediting body for medical education leading to the doctor of medicine degree or the doctor of osteopathy degree. This subsection does not apply to postgraduate medical education or training.

(c) An applicant who is unable to meet the requirement established by Subsection (b) may be eligible for an unrestricted license if the applicant:

(1) received medical education in a hospital or teaching institution sponsoring or participating in a program of graduate medical education accredited by the Accreditation Council for Graduate Medical Education, the American Osteopathic Association, or the board in the same subject as the medical or osteopathic medical education as defined by board rule; or

(2) is specialty board certified by a specialty board approved by the American Osteopathic Association or the American Board of Medical Specialties.

(d) In addition to the other requirements prescribed by this subtitle, the board may require an applicant to comply with other requirements that the board considers appropriate.

(e) An applicant is not eligible for a license if:

(1) the applicant holds a medical license that is currently restricted for cause, canceled for cause, suspended for cause, or revoked by a state, a province of Canada, or a uniformed service of the United States;

(2) an investigation or a proceeding is instituted against the applicant for the restriction, cancellation, suspension, or revocation in a state, a province of Canada, or a uniformed service of the United States; or

(3) a prosecution is pending against the applicant in any state, federal, or Canadian court for any offense that under the laws of this state is a felony or a misdemeanor that involves moral turpitude.

CREDIT(S)

Acts 1999, 76th Leg., ch. 388, § 1, eff. Sept. 1, 1999. Amended by Acts 2001, 77th Leg., ch. 1420, § 14.027(b),

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

eff. Sept. 1, 2001; Acts 2005, 79th Leg., ch. 269, § 1.21, eff. Sept. 1, 2005; Acts 2011, 82nd Leg., ch. 498 (H.B. 1380), § 1, eff. Sept. 1, 2011.

Current through the end of the 2013 Third Called Session of the 83rd Legislature

(C) 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

▷

**Effective: October 29, 2013**

Vernon's Texas Statutes and Codes Annotated Currentness
 **Occupations** Code (Refs & Annos)
  Title 3. Health Professions
   Subtitle B. Physicians
    ⌐▤ Chapter 164. Disciplinary Actions and Procedures
     ⌐▤ Subchapter B. License Denial and Disciplinary Actions
      ➡➡ **§ 164. 052. Prohibited Practices by Physician or License Applicant**

(a) A physician or an applicant for a license to practice medicine commits a prohibited practice if that person:

(1) submits to the board a false or misleading statement, document, or certificate in an application for a li- cense;

(2) presents to the board a license, certificate, or diploma that was illegally or fraudulently obtained;

(3) commits fraud or deception in taking or passing an examination;

(4) uses alcohol or drugs in an intemperate manner that, in the board's opinion, could endanger a patient's life;

(5) commits unprofessional or dishonorable conduct that is likely to deceive or defraud the public, as provided by Section 164.053, or injure the public;

(6) uses an advertising statement that is false, misleading, or deceptive;

(7) advertises professional superiority or the performance of professional service in a superior manner if that advertising is not readily subject to verification;

(8) purchases, sells, barters, or uses, or offers to purchase, sell, barter, or use, a medical degree, license, certi- ficate, or diploma, or a transcript of a license, certificate, or diploma in or incident to an application to the board for a license to practice medicine;

(9) alters, with fraudulent intent, a medical license, certificate, or diploma, or a transcript of a medical license, certificate, or diploma;

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

(10) uses a medical license, certificate, or diploma, or a transcript of a medical license, certificate, or diploma that has been:

   (A) fraudulently purchased or issued;

   (B) counterfeited; or

   (C) materially altered;

(11) impersonates or acts as proxy for another person in an examination required by this subtitle for a medical license;

(12) engages in conduct that subverts or attempts to subvert an examination process required by this subtitle for a medical license;

(13) impersonates a physician or permits another to use the person's license or certificate to practice medicine in this state;

(14) directly or indirectly employs a person whose license to practice medicine has been suspended, canceled, or revoked;

(15) associates in the practice of medicine with a person:

   (A) whose license to practice medicine has been suspended, canceled, or revoked; or

   (B) who has been convicted of the unlawful practice of medicine in this state or elsewhere;

(16) performs or procures a criminal abortion, aids or abets in the procuring of a criminal abortion, attempts to perform or procure a criminal abortion, or attempts to aid or abet the performance or procurement of a criminal abortion;

(17) directly or indirectly aids or abets the practice of medicine by a person, partnership, association, or corporation that is not licensed to practice medicine by the board;

(18) performs an abortion on a woman who is pregnant with a viable unborn child during the third trimester of the pregnancy unless:

   (A) the abortion is necessary to prevent the death of the woman;

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

(B) the viable unborn child has a severe, irreversible brain impairment; or

(C) the woman is diagnosed with a significant likelihood of suffering imminent severe, irreversible brain damage or imminent severe, irreversible paralysis;

(19) performs an abortion on an unemancipated minor without the written consent of the child's parent, managing conservator, or legal guardian or without a court order, as provided by Section 33.003 or 33.004, Family Code, authorizing the minor to consent to the abortion, unless the physician concludes that on the basis of the physician's good faith clinical judgment, a condition exists that complicates the medical condition of the pregnant minor and necessitates the immediate abortion of her pregnancy to avert her death or to avoid a serious risk of substantial impairment of a major bodily function and that there is insufficient time to obtain the consent of the child's parent, managing conservator, or legal guardian; or

(20) performs or induces or attempts to perform or induce an abortion in violation of Subchapter C, Chapter 171, Health and Safety Code.

(b) For purposes of Subsection (a)(12), conduct that subverts or attempts to subvert the medical licensing examination process includes, as prescribed by board rules, conduct that violates:

(1) the security of the examination materials;

(2) the standard of test administration; or

(3) the accreditation process.

(c) The board shall adopt the forms necessary for physicians to obtain the consent required for an abortion to be performed on an unemancipated minor under Subsection (a). The form executed to obtain consent or any other required documentation must be retained by the physician until the later of the fifth anniversary of the date of the minor's majority or the seventh anniversary of the date the physician received or created the documentation for the record.

CREDIT(S)

Acts 1999, 76th Leg., ch. 388, § 1, eff. Sept. 1, 1999. Amended by Acts 2005, 79th Leg., ch. 269, § 1.42, eff. Sept. 1, 2005; Acts 2013, 83rd Leg., 2nd C.S., ch. 1 (H.B. 2), § 6, eff. Oct. 29, 2013.

Current through the end of the 2013 Third Called Session of the 83rd Legislature

(C) 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.



C

**Effective:[See Text Amendments]**

Vernon's Texas Statutes and Codes Annotated Currentness
  **Occupations** Code (Refs & Annos)
    Title 3. Health Professions
      Subtitle B. Physicians
        Chapter 165. Penalties
          Subchapter D. Criminal Penalties
            **§ 165. 153. Criminal Penalties for Additional Harm**

(a) A person commits an offense if the person practices medicine without a license or permit and causes another person:

  (1) physical or psychological harm; or

  (2) financial harm.

(b) An offense under Subsection (a)(1) is a felony of the third degree.

(c) An offense under Subsection (a)(2) is a state jail felony.

CREDIT(S)

Acts 1999, 76th Leg., ch. 388, § 1, eff. Sept. 1, 1999.

REVISOR'S NOTE

2012 Main Volume

    Sections 3.07(a)(2) and (3), V.A.C.S. Article 4495b, refer to a person practicing medicine with a "valid" license or permit. The revised law omits "valid" as unnecessary because the word does not add to the clear meaning of the law. For example, a document purporting to be a license is no longer a license if it is expired and is not a license if it is a forgery.

HISTORICAL AND STATUTORY NOTES

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.